## RYAN ET AL. *v.* CARTER ET AL.

1. The first section of the act of June 13, 1812 (2 Stat. 748), making further provision for settling the claims to land in the Territory of Missouri, confirms, *proprio vigore*, the rights, titles, and claims to the lands embraced by it, and, to all intents and purposes, operates as a grant.

2. The court adheres to the doctrine, announced in its previous decisions, that a confirmatory statute passes a title as effectually as if it in terms contained a grant *de novo*, and that a grant may be made by a law as well as by a patent pursuant to law.

3. Said first section is not, by the proviso thereto annexed, excluded from operating on the right and claim of an inhabitant of a village which is therein named to an out-lot, whose title thereto had, on his petition, been recognized and confirmed by the board of commissioners for adjusting and settling claims to land in said Territory.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

This is an action of ejectment, brought Aug. 27, 1873, for part of a tract of land known as Survey 422, situate in the county of St. Louis, Mo. The parties claimed title under Auguste Dodier, and defendants relied also on the Statute of Limitations.

On the 13th of October, 1800, Dodier asked of the then Spanish Lieutenant-Governor of Upper Louisiana a concession of five hundred arpens of land; and, on the 14th of that month, the Lieutenant-Governor ordered that he should be put in posses-

sion of the land requested.   A survey and plat of the land so ceded was made by Soulard, surveyor under the Spanish government, and certified by him Dec. 10, 1800, and recorded by him in the record-book of surveys.   Dodier duly filed and presented his claim to the board of commissioners for adjusting land-titles in the District of Orleans, Territory of Louisiana, who, on the thirty-first day of July, 1810, issued to him the following certificate : —

*Commissioners' Certificate, No.* 422, *July* 31, 1810.

"We, the undersigned, commissioners for ascertaining and adjusting the titles and claims to lands in the Territory of Louisiana, have decided that Auguste Dodier, original claimant, is entitled to a patent under the provisions of the second section of an act of the Congress of the United States, entitled ' An Act for ascertaining and adjusting the titles and claims to land within the Territory of Orleans and the District of Louisiana,' passed the second day of March, 1805, for five hundred arpens of land, situate in the District of St. Louis, on Beaver Pond, as described in a plat of survey, certified the 10th of December, 1800, and to be found of record in book A, page 326, of the recorder's office, by virtue of a permission from the proper Spanish officer, and also of actual inhabitation and cultivation prior to and on the twentieth day of December, 1803."

"James B. C. Lucas,
Clement B. Penrose,
Frederick Bates."

The land so confirmed was surveyed in 1817, by the proper surveyor of the United States, and is known as United States Survey No. 422; but the patent reciting the confirmation and survey was not issued until Aug. 9, 1873.

Dodier died in 1823, leaving heirs-at-law, under whom the plaintiffs claim title.   Dodier and wife conveyed a part of the land by deed, bearing date Jan. 18, 1805, to Louis Labeaume, who died in 1821, having devised the property to his wife, by will made in 1817 ; and by mesne conveyances her title passed to the defendant Carter.   He, and those under whom he claims, have been in the open, notorious, and undisputed possession of the demanded premises for thirty-five years before the commencement of this suit.   In 1818, on the petition of Labeaume, partition was made between him and the heirs of Dodier; but

the land in controversy is not within the boundaries of the tract described in the report of the commissioners in said partition suit to be set off to Labeaume.

In the year 1822, Susan Labeaume brought an action of trespass *quare clausum fregit* against Dodier's heirs, in the Circuit Court of St. Louis County, to which was pleaded the general issue, and *liberum tenementum;* whereupon the plaintiff replied to second plea by novel assignment (describing the close as in the report of commissioners in the above partition suit). On July 27, 1825, the defendants in said suit obtained a verdict and a judgment thereon, and the case was taken by writ of error to the Supreme Court of the State of Missouri, by which, on May 25, 1826, the judgment was reversed and the case remanded, and on May 8, 1827, defendants again obtained judgment in the said Circuit Court. From the record of the said Supreme Court in said cause, it appears that a transcript of the record of said partition suit of *Louis Labeaume* v. *Dodier's Heirs,* was read in evidence, but that the notice to defendants in said partition suit was not included in the bill of exceptions, and was not before the Supreme Court, and that the conveyance from Auguste Dodier and wife to Louis Labeaume, being admitted by defendants in said trespass suit, was also read upon the trial of said cause, and a copy thereof preserved in the bill of exceptions taken and filed in said cause.

Prior to and on Dec. 20, 1803, Auguste Dodier was an inhabitant of the village of St. Louis, possessed and cultivated the land known as United States Survey No. 422, and had a right, title, and claim thereto. It was an out-lot of the said village, within the meaning of the act of June 13, 1812, with definite boundaries and location, prior to and at the date of the acquisition of Louisiana by the United States.

These are the material facts found by the court below, which, by written stipulation of the parties, made a special finding of the facts.

The court gave judgment for the defendants; whereupon the plaintiffs sued out this writ of error.

Argued by *Mr. Daniel T. Jewett* for the plaintiffs in error, who cited *Magwire* v. *Tyler,* 8 Wall. 650; *Gibson* v. *Chouteau,* 13 id. 92; *Guitard* v. *Stoddard,* 16 How. 494; *Clarke* v. *Hum-*

*merle,* 36 Mo. 620; *Glasgow* v. *Hortiz,* 1 Black, 600; *Strother* v. *Lucas,* 12 Pet. 410.

*Mr. Montgomery Blair, contra.*

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendants, and those under whom they claim, have been in continuous and adverse possession of the land in controversy, claiming title to it for more than thirty-five years. The *justice* of the case, growing out of such length of possession, is manifestly with the court below; and we think the *law* of it is equally so.

The property in suit is part of a tract of land known as Survey 422, in the county of St. Louis. The court below, by stipulation, tried the case, and made a special finding of facts, on which it based its conclusion of law, that the plaintiffs could not recover. It is objected that some of these facts were not warranted by the evidence; but this is not a subject of inquiry here. If the parties chose to adopt this mode of trial, they are concluded by the propositions of fact which the evidence, in the opinion of that court, establishes. Whether general or special, the finding has the same effect as the verdict of a jury; and its sufficiency to sustain the judgment is the only matter for review in this court. *Norris* v. *Jackson,* 9 Wall. 125; *Flanders* v. *Tweed,* id. 425; *Kearney* v. *Case,* 12 id. 275; *Miller* v. *Life Ins. Co.,* id. 285.

Both parties claim under Auguste Dodier, to whom the tract was confirmed in 1810, by the board of commissioners created to settle the title to lands in the Territories of Orleans and Louisiana. The plaintiffs insist that this confirmation vested only an equitable title, and that the Statute of Limitations did not begin to run until the fee passed out of the United States by patent, in 1873. On the other hand, the defendants contend that the fee passed directly to him in 1812, by operation of the act of June 13 of that year (2 Stat. 748); and, if so, it is conceded that the Statute of Limitations gives them title. It becomes necessary, therefore, to inquire how far the acts of Congress to protect the rights of property in the territory acquired from France by the treaty of April 30, 1803, apply to and affect the title to the land in controversy.

The United States stipulated that the inhabitants of the ceded country should be protected in the free enjoyment of their property; and in discharge of this obligation, and with a view to ascertain and adjust their claims to land, Congress passed acts in 1805, 1806, and 1807. As the board progressed in its investigations, it was found that the enforcement of the rules prescribed for its guidance excluded from confirmation a large number of meritorious claims, and more liberal provision was made for them by the act of June 13, 1812. Its first section declares " that the rights, titles, and claims to town or village lots, out-lots, common field-lots, and commons in, adjoining, and belonging to the several towns and villages (naming them), in the Territory of Missouri, which lots have been inhabited, cultivated, or possessed, prior to the twentieth day of December, 1803, shall be, and the same are hereby, confirmed to the inhabitants of the respective towns or villages aforesaid, according to their several right or rights of common thereto, provided that nothing herein contained shall be construed to affect the rights of any person claiming the same lands, or any part thereof, whose claims have been confirmed by the board of commissioners for adjusting and settling claims to lands in the said Territory." It does not require the production of proofs before any commission or other tribunal established for that special purpose, but confirms, *proprio vigore,* the rights, titles, and claims to the lands embraced by it, and operates as a grant, to all intents and purposes. Repeated decisions of this court have declared that such a statute passes the title of the United States as effectually as if it contained in terms a grant *de novo,* and that a grant may be made by a law, as well as by a patent pursuant to a law.

The court below found that the lot of ground, now known as Survey 422, was an " out-lot " of the village of St. Louis, with definite boundaries and location, prior to and at the date of the acquisition of Louisiana by the United States, and that Dodier was in possession of it, and an inhabitant of the village. It follows that the confirmation became complete, and vested in him a legal title, valid against the United States, and all persons claiming under it by a subsequent patent, unless his case

was taken out of the enacting clause by the proviso that the act shall not *affect* any confirmed claims to the same lands. How " affect " them? If in the sense of simply acting upon them, then his title is excepted from the operation of the act. But this exception is not within the reason of the proviso, and the court is at liberty to adopt another construction, if it may be fairly done, by giving full and just effect to the words used.

The general rule of law is, that a proviso carves special exceptions only out of the body of the act; and those who set up any such exception must establish it, as being within the words as well as the reason thereof. *United States* v. *Dickson,* 15 Pet. 165. Why should Congress wish to exclude Dodier's title, if it did not conflict with any other, and was embraced by the general words of the statute? If it was left incomplete by the act of 1807, and completed by the act of 1812, there was certainly no reason for excluding it. It was within the power of Congress to favor the inhabitants of villages over other claimants; and the fact that he had documentary evidence of his title to this out-lot, which the commissioners recognized and approved, affords no ground for supposing that Congress meant to deprive him of the benefit of another law dispensing with this evidence, and still meeting the requirements of his case. This would lead to unjust consequences; for it would discriminate between villagers, and put claims, supported by paper-title with possession, on a less favored footing than those resting only on cultivation and possession. Besides, such a purpose is inconsistent with the avowed object of the law, which is to confirm to the villagers, without discriminating in favor of any class, their rights of property, whether held in severalty or in common. If Congress had intended to exclude confirmed claims, the fair presumption is, that it would have, in terms, excepted them, or by some form of words declared their exclusion. But common fairness required that successful claimants before the board of commissioners should, in any event, be protected, and that the general words of the law should be so limited as not to produce a conflict of title. It would have been wrong, in legislating for the inhabitants of ancient villages, to do any thing prejudicial to those who, having been invited to present their claims to the

board, had obtained its approval of them. This was recognized by Congress; and, to guard against the possibility of conflict, the proviso was inserted. No known rule of law requires us to interpret it according to its literal import, when its evident intent is different. It may be that the words, taken in their usual sense, would exclude the case of Dodier; but if it can be gathered, from a view of the whole law, and others *in pari materia*, that they were not used in that sense, and if they admit of another meaning in perfect harmony with the general scope of the statute, it will be adopted as the declaration of the will of Congress. Especially is this so when this construction withdraws the least number of cases from the operation of the statute. It is unnecessary to give the various definitions of the word " affect." It is enough to say, that it is often used in the sense of acting injuriously upon persons and things; and in this sense, we are all of opinion, it was used in this proviso. This interpretation accords with the reason and manifest intent of the proviso. It unsettles no confirmed title, and secures to the inhabitants of the villages, according to their respective rights, the protection which Congress in its wisdom thought proper to afford them.

If there were any doubt remaining about the correctness of this construction, it would be removed by a consideration of the act of 1807, which is *in pari materia*. The various laws, from time to time passed respecting the claims to lands in the Territories of Orleans and Louisiana, were modified as policy required; but they constitute a land system, are all *in pari materia*, and, in explaining their meaning and import, are to be regarded as one statute. *Patterson* v. *Winn*, 11 Wheat. 336. The third section of the act of 1807 (2 Stat. 440) confirms the claim of the corporation of the city of New Orleans to the commons adjacent to the city, and provides, that " nothing herein contained shall be construed to *affect or impair* the rights of any individual or individuals to the said commons which are derived from any grant of the French or Spanish governments." The word " impair " is dropped from the proviso in the act of 1812, doubtless because it was deemed superfluous and unnecessary. There was no reason why the different provisos should have different limitations. Both had a common

object, — to protect individual rights and prevent conflict of titles. The grants of the New Orleans commons, in the one case, and of the village lots in the other, were simply on the condition that no adverse claimant should be injured by them. If it should turn out that any one was benefited by the grant, he was not barred from availing himself of it because he had given another title in evidence before a regularly constituted board of commissioners.

*Strother* v. *Lucas*, 12 Pet. 410, is cited by the plaintiffs as an authority in this case ; but it can hardly be considered in that light. It is true that the court treat Lucas's title as " being a grant by the United States, under the confirmation of the commissioners and the act of 1812 ; " but the effect which that act has on a lot confirmed by the commissioners was not discussed at the bar, or considered in the opinion, nor has it, to our knowledge, been heretofore decided by this court.

It is claimed that the effect of the partition suit is to estop the defendants from setting up title to lands which were not assigned to Labeaume by the commissioners in partition. But the lines of partition were incorrect.; for the court finds that the land' in controversy is a part of that conveyed to Labeaume by deed from Dodier, and is not within the boundaries of the land set off to him. Besides, neither party recognized the proceedings in partition as binding ; nor were they at all necessary, as the deed calls for the whole estate in a specified part of a tract of land. In such a case, the deed ought to and must control the rights of the parties.

It is unnecessary to notice any other assignments of error, for these views dispose of the whole case, and affirm the judgment of the Circuit Court.                    *Judgment affirmed.*