**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRESHTA Y. NAYAB, individually and on behalf of others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> CAPITAL ONE BANK (USA), N.A., *Defendant-Appellee*. | No. 17-55944 <br><br> D.C. No. 3:16-cv-03111-CAB-MDD <br><br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted December 6, 2018
Pasadena, California

Filed October 31, 2019

Before: Johnnie B. Rawlinson and Carlos T. Bea, Circuit
Judges, and Thomas O. Rice,[*] Chief District Judge.

Opinion by Chief District Judge Rice;
Partial Concurrence and Partial Dissent by
Judge Rawlinson

---

[*] The Honorable Thomas O. Rice, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

## SUMMARY[**]

### Fair Credit Reporting Act / Standing

The panel reversed the district court's dismissal of a Fair Credit Reporting Act claim for lack of standing and failure to state a claim and remanded the case to the district court.

Plaintiff alleged that Capital One Bank (USA), N.A., obtained her credit report for a purpose not authorized by the FCRA, in violation of 15 U.S.C. § 1681b(f).

The panel held that plaintiff had Article III standing because a consumer suffers a concrete injury in fact when a third party obtains her credit report for an unauthorized purpose, regardless of whether the credit report is published or otherwise used by that third party.

The panel held that plaintiff stated a claim because a consumer-plaintiff need allege only that her credit report was obtained for a purpose not authorized by the statute to survive a motion to dismiss, and the defendant bears the burden of pleading it obtained the report for an authorized purpose. The plaintiff does not have the burden of pleading the actual purpose behind the defendant's procurement of her credit report, and she need allege only facts giving rise to a reasonable inference that the defendant obtained the credit report in violation of § 1681b(f)(1).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Rawlinson concurred in part and dissented in part. Judge Rawlinson agreed that plaintiff had standing to pursue her action under the FCRA but disagreed that she stated a plausible claim. Judge Rawlinson wrote that, under the *Twombly/Iqbal* standard and Federal Rule of Civil Procedure 8(a), the pleading was inadequate.

## COUNSEL

Alex Asil Mashiri (argued), Mashiri Law Firm, San Diego, California; Tamim Jami, The Jami Law Firm P.C., San Diego, California; for Plaintiff-Appellant.

Hunter R. Eley (argued), Lloyd Vu, and Chelsea L. Diaz, Doll Amir & Eley LLP, Los Angeles, California, for Defendant-Appellee.

## OPINION

RICE, Chief District Judge:

Freshta Nayab appeals the district court's order which dismissed her Fair Credit Reporting Act ("FCRA") claim with prejudice and without leave to amend for lack of standing and for failure to state a claim. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We accept as true all factual allegations in the operative complaint, and we construe them in the light most favorable to Plaintiff as the non-moving party." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017). "We review de novo the district court's decision to grant a motion to dismiss a claim under Rule 12(b)(6)." *Id.* at 982. "To survive a motion to dismiss, the claim must be plausible on its face." *Id.* "We must

uphold a district court's decision to dismiss *either* if a cognizable legal theory is absent *or* if the facts alleged fail to suffice under a cognizable claim."   *Id.* (emphasis in original).

This case presents two issues of first impression for this Circuit: (1) whether a consumer suffers a concrete Article III injury in fact when a third-party obtains her credit report for a purpose not authorized by the FCRA and (2) whether the consumer-plaintiff must plead the third-party's actual unauthorized purpose in obtaining the report to survive a motion to dismiss.   We hold that a consumer suffers a concrete injury in fact when a third-party obtains her credit report for a purpose not authorized by the FCRA.  We also hold that a consumer-plaintiff need allege only that her credit report was obtained for a purpose not authorized by the statute to survive a motion to dismiss; the defendant has the burden of pleading it obtained the report for an authorized purpose.

## THE FAIR CREDIT REPORTING ACT

"Congress enacted the FCRA in 1970 in response to concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC*, 853 F.3d 492, 496 (9th Cir.), *cert. denied*, 138 S. Ct. 447 (2017) (citation omitted); *see Spokeo, Inc. v. Robins (Spokeo II)*, 136 S. Ct. 1540, 1550 (2016).   "Specifically, Congress recognized the need to 'ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Syed*, 853 F.3d at 496 (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)).   In the context of the protections afforded under the FCRA, we recently observed that "[t]he modern information age has shined a spotlight on information privacy, and on the widespread use of consumer

credit reports to collect information in violation of consumers' privacy rights." *Id.* at 495.

The FCRA defines a credit report as any written, oral, or other communication of information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ." 15 U.S.C. § 1681a(d)(1). The FCRA provides:

> A person shall not use or obtain a consumer report for any purpose unless–
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f). Section 1681b(a) provides the authorized purposes for which a consumer report may be furnished:

> Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> (1) In response to the order of a court . . . or a subpoena issued in connection with proceedings before a Federal grand jury.

(2) In accordance with the written instructions of the consumer . . . .

(3) To a person which it has reason to believe–

(A) intends to use the information in connection with a credit transaction involving the consumer . . . and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with . . . a license or other benefit granted by a governmental instrumentality . . . ; or

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information–

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

(G) executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards.

(4) In response to a request by the head of a State or local child support enforcement agency . . . .

(5) To an agency . . . for use to set an initial or modified child support award.

(6) To the Federal Deposit Insurance Corporation or the National Credit Union Administration . . . .

15 U.S.C. § 1681b(a).

Notably, § 1681b(a)(3)(A) allows a third-party to obtain a consumer's credit report without having a previous relationship with the consumer and without the consumer initiating the transaction. *See* 15 U.S.C. §1681b(c)(1) (a third-party may obtain a consumer's credit report if "the transaction consists of a firm offer of credit or insurance[,]" even if the transaction "is not initiated by the consumer"); S. REP. 103-209, 4 (1993) ("the Committee bill explicitly permits consumer report information to be obtained in connection with two types of transactions that are not

initiated by the consumer: direct marketing and prescreening."). In recognition "that some consumers may find that direct marketing and prescreening entail an undesirable invasion of their privacy[,]" S. REP. 104-185, 38 (1995), a "consumer may elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency under subsection (c)(1)(B) in connection with a credit or insurance transaction that is not initiated by the consumer[,]" 15 U.S.C. § 1681b(e)(1).

## DISCUSSION

### I. *Standing*

Does a consumer sustain a "concrete" injury when a third-party obtains her credit report for a purpose not authorized by the Fair Credit Reporting Act?

The judicial Power of the United States "extends only to 'Cases' and 'Controversies[.]'" *Spokeo II*, 136 S. Ct. at 1547 (United States Constitution, Art. III, § 2). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id*. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

This case, like *Spokeo II*, "primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998)) (brackets in original). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan,* 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560, n.1). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist[,]" meaning—"'real,' and not 'abstract.'" *Id.* (citations omitted). "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize. . . . intangible injuries can nevertheless be concrete." *Id.* at 1549.

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* "Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 775–777 (2000)). "In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* "The . . . injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Lujan*, 504 U.S. at 578 (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

The Supreme Court in *Spokeo II*—a case addressing standing in the FCRA context—cautioned that a bare procedural violation may not establish a concrete harm sufficient for Article III standing. 136 S. Ct. at 1550. On

remand from the Supreme Court, however, we adopted the Second Circuit's holding that "an alleged procedural violation [of a statute] can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents 'a risk of real harm' to that concrete interest." *Robins v. Spokeo, Inc. (Spokeo III)*, 867 F.3d 1108, 1113 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (quoting *Spokeo II*, 136 S. Ct. at 1549)).

We have also recognized a distinction between violations of a procedural right, at issue in *Spokeo*, and a substantive right. *See Eichenberger*, 876 F.3d at 982–83 (the "provision does not describe a procedure that [a person] must follow. Rather, it protects generally a consumer's substantive privacy interest in his or her [private information]."). A violation of a substantive right invariably "offends the interests that the statute protects." *Id.* at 983.

For example, in *Eichenberger*, we held that a consumer had standing to sue under the Video Privacy Protection Act (VPPA) when his or her video-viewing history was disclosed in violation of 18 U.S.C. § 2710(b)(1). *Id.* at 984. We explained the consumer has a "substantive privacy interest in his or her video-viewing history[,]" which the VPPA sought to protect "by ensuring that consumers retain control over their personal information." *Id.* at 983. We reasoned the prohibition against disclosing one's video-viewing history does not "describe a procedure that video service providers must follow" but rather "protects generally a consumer's substantive privacy interest in his or her video-viewing history." *Id.* We thus concluded that "*every* disclosure . . . offends the interests that the statute protects"

and plaintiff "need not allege any further harm to have standing." *Id.* at 983–84 (emphasis in original).

Nayab has standing to pursue her FCRA claim based on Capital One's alleged violation of 15 U.S.C. § 1681b(f)(1). First, obtaining a credit report for a purpose not authorized under the FCRA violates a *substantive* provision of the FCRA. Like the VPPA interpreted in *Eichenberger*, § 1681b(f)(1)—which prohibits obtaining a credit report for a purpose not otherwise authorized—protects the consumer's *substantive* privacy interest. The section does not merely "describe a procedure" that one must follow. Rather, § 1681b(f)(1) is the central provision protecting the consumer's privacy interest: every violation invades the consumer's privacy right that Congress sought to protect in passing the FCRA. As such, every violation of § 1681b(f)(1) "offends the interest that the statute protects" and the Plaintiff "need not allege any further harm to have standing." *See Eichenberger*, 876 F.3d at 983–84.

Second, we have previously found the invasion of the interest at issue—the right to privacy in one's consumer credit report—confers standing. *See Syed*, 853 F.3d at 499–500. In *Syed*, the plaintiff alleged his employer improperly obtained his credit report in violation of the FCRA. *Id.* at 498. Under the FCRA, a consumer report may be obtained for employment purposes if the prospective employer (1) provides a "document that consists *solely* of the disclosure" and (2) receives written authorization from the applicant. 15 U.S.C. § 1681b(b)(2)(A)(i)–(ii) (emphasis added). The plaintiff in *Syed* signed a document purporting to give the prospective employer permission to obtain the credit report, but the prospective employer included in the disclosure document a provision for the disclosure of the applicant's information along with a liability waiver, in violation of the

FCRA. *Syed*, 853 F.3d at 496. We found that Syed's allegations that the prospective employer had "procured a 'consumer report' . . . based on the illegal disclosure and authorization form" was "sufficient to infer that Syed was deprived of the right to information and the right to privacy guaranteed by [§] 1681b(b)(2)(A)(i)–(ii) because it indicates that Syed was not aware that he was signing a waiver authorizing the credit check when he signed it." *Id.* at 499. We explained that the "authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check." *Id.* Accordingly, we concluded that "Syed did allege a concrete injury and has Article III standing to bring this lawsuit." *Syed*, 853 F.3d at 500 (citing *Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 628–638 (E.D. Va 2016)).

Third, historical practice also supports a finding of standing. The harm attending a violation of § 1681b(f)(1) of the FCRA is closely related to—if not the same as—a harm that has traditionally been regarded as providing a basis for a lawsuit: intrusion upon seclusion (one form of the tort of invasion of privacy). *See Spokeo II*, 136 S. Ct. at 1549; Restatement (Second) of Torts § 652B, cmt. a (1977). According to the Restatement (Second) of Torts § 652B:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Intrusion upon seclusion "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." *Id.* Rather, "[i]t consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." *Id.* at cmt. a. For example, "[t]he invasion may be . . . by some [] form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents." Restatement (Second) of Torts § 652B. Importantly, "[t]he intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined." *Id.*

We have also recognized that "[v]iolations of the right to privacy have long been actionable at common law" and, referencing the tort of intrusion upon seclusion, "privacy torts do not always require additional consequences to be actionable." *Eichenberger*, 876 F.3d at 983 (citing *Braitberg v. Charter Comm., Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) and Restatement (Second) of Torts § 652B cmt. b. (1977)). As well, the Supreme Court has long recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763–64 (1989).

The harm at issue here—the release of highly personal information in violation of the FCRA—is the same harm that forms the basis for the tort of intrusion upon seclusion. *See Spokeo III*, 867 F.3d at 1114 ("As other courts have

observed, the interests that FCRA protects also resemble other reputational and privacy interests that have long been protected in the law." (citing *e.g.*, *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638–40 (3d Cir. 2017) (comparing FCRA's privacy protections to common law protections for "a person's right to prevent the dissemination of private information"; holding that "the unauthorized dissemination of their own private information" is "a *de facto* injury that satisfies the concreteness requirement for Article III standing"). When a third party obtains the consumer's credit report in violation of 15 U.S.C. § 1681b(f)—that is, for a purpose not authorized by statute—the consumer is harmed because he or she is deprived of the right to keep private the sensitive information about his or her person. *See Syed*, 853 F.3d at 499–500. This harm is highly offensive and is not trivial because a credit report can contain highly personal information.

Finally, the judgment of Congress further supports a finding of standing. In passing the FCRA, Congress specifically recognized the "elaborate mechanism [] developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers" and the "need to insure that consumer reporting agencies exercise their *grave responsibilities* with fairness, impartiality, and a respect for the *consumer's right to privacy*." 15 U.S.C. § 1681 (emphasis added). We have observed that "the FCRA was designed in whole and in virtually each part to protect . . . consumers themselves[,]" *Hansen v. Morgan*, 582 F.2d 1214, 1221 (9th Cir. 1978), and that one goal of the FCRA is to allow the "release of credit report for certain purposes only," *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1274 (9th Cir. 1990). Congress' concern for

privacy in one's consumer report is made clear by the FCRA's (1) general prohibition against obtaining a consumer report except in limited circumstances, 15 U.S.C. § 1681b(f); (2) provision of civil liability for violations of the FCRA, 15 U.S.C. § 1681n, including statutory damages for willful violations, 15 U.S.C. § 1681n; and (3) provision of criminal (and civil)[1] liability for those obtaining a credit report under false pretenses, 15 U.S.C. § 1681q.[2] By providing for statutory damages and "[b]y providing a private cause of action for violations of [Sections 1681f and 1681q], Congress has recognized the harm such violations cause, thereby articulating a 'chain[ ] of causation that will give rise to a case or controversy.'" *See Syed*, 853 F.3d at 499 (brackets in original) (quoting *Spokeo II*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring))).

Nayab has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by the statute, regardless

---

[1] A violation of § 1681q, which imposes criminal liability for obtaining a credit report under false pretenses, is also a basis for civil suit under § 1681n. *Comeaux*, 915 F.2d at 1274.

[2] To obtain a credit report, the prospective user must certify the purpose for obtaining the credit report. 15 U.S.C. § 1681b(f)(2). Credit reporting agencies are allowed to provide a credit report only for an authorized purpose. 15 U.S.C. § 1681b(a). As such, as long as the credit reporting agencies follow the proper procedures, a third party will not be able to obtain a credit report for a purpose authorized by the statute without falsely certifying otherwise. Thus, by criminalizing the procurement of a credit report under false pretenses, 15 U.S.C. § 1681q, Congress recognized the very concern at issue here: that a person may obtain another's credit report by feigning a purpose authorized by the statute.

whether the credit report is published or otherwise used by that third-party.

## II. *Failure to State a Claim*

Must the consumer-plaintiff plead the third-party's actual unauthorized purpose in obtaining the credit report to survive a motion to dismiss?

The district court erred in holding that Nayab, as the plaintiff, has the burden of pleading the actual purpose behind Capital One's procurement of her credit report.  A plaintiff need allege only facts giving rise to a reasonable inference that the defendant obtained his or her credit report in violation of § 1681b(f)(1) to meet their burden of pleading.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the plaintiff must plead "factual content" giving rise to the "reasonable inference that the defendant is liable for the misconduct alleged").  Requiring otherwise would create an often insurmountable legal barrier to the protection of the interests the FCRA sought to protect.  Notably, this question centers around *whether the plaintiff must plead facts which establish the defendant's actual purpose*.  This question is separate from the question whether Nayab has pleaded facts sufficient to meet her burden of pleading—although the former informs the analysis of the latter.

As discussed below, because Nayab did not have the burden of pleading Capital One's actual unauthorized purpose, and because she has alleged facts sufficient to give rise to a reasonable inference that Capital One obtained her credit report in violation of § 1681b(f)(1), Nayab stated a plausible claim for relief and the District Court erred in holding otherwise.

### 1. Nayab is not required to plead Capital One's actual unauthorized purpose

The District Court erred by placing the burden of pleading Defendant's actual unauthorized purpose on Plaintiff.

For context, it is important to note that the burden of pleading (*i.e.* who bears the burden of pleading a fact)—not the ultimate burden of production or persuasion—is at issue. However, who bears the ultimate burden of proof and/or persuasion is indicative of who bears the initial burden of pleading, so we will rely on case law discussing the former. *See* 2 McCormick On Evid. § 337 (7th ed.) ("In most cases, the party who has the burden of pleading a fact will have the burdens of producing evidence and of persuading the jury of its existence as well[,]" so "[t]he pleadings [] provide the common guide for apportioning the burdens of proof.")

Federal Rule of Civil Procedure 8 sets the framework for pleadings. Rule 8(a) provides: "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ." Rule 8(c)(1) in turn requires the party responding to a pleading to "affirmatively state any avoidance or affirmative defense, including: . . . license, payment, [and] release[,]" among other things. Even under the more rigid pleading standard of Federal Rule of Civil Procedure 9, however, the pleader is not required to allege facts that are "peculiarly within the opposing party's knowledge," and allegations "based on information and belief may suffice," "so long as the allegations are accompanied by a statement of facts upon which the belief is founded." *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other*

*grounds as stated in Flood v. Miller*, 35 Fed. Appx. 701, 703 n.3 (9th Cir. 2002), (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 416 & n.96 (1969)); *Puri v. Khalsa*, 674 F. Appx. 679, 687 (9th Cir. 2017). "When we are determining the burden of proof under a statutory cause of action, the touchstone of our inquiry is, of course, the statute." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). Where the statute is silent as to who bears the burden of proof, we "begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Id.* (citation omitted). "The ordinary default rule, of course, admits of exceptions." *Id.* (citation omitted). The exceptions "owe their development partly to traditional happen-so and partly to considerations of policy." 2 McCormick on Evid. § 337 (7th ed.). For example, in allocating the burden of pleading, courts have considered "[t]he policy of handicapping a disfavored contention"; "[c]onvenience in following the natural order of storytelling"; and "the judicial estimate of the probabilities of the situation." *Id.*

"Among other considerations, allocations of burdens of production and persuasion may depend on which party— plaintiff or defendant, petitioner or respondent—has made the 'affirmative allegation' or 'presumably has peculiar means of knowledge.'" *Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 494, n.17 (2004). Relatedly, courts have shifted the burden of "establish[ing] a negative" to the defendant where holding otherwise "would impose upon the plaintiffs a difficult, if not an impossible, task" of requiring them to produce evidence that a fact is not the case, though evidence to the contrary "could be readily produced by the defendant." *United States v. Denver & Rio Grande R.R. Co.*, 191 U.S. 84, 91–92 (1903). Indeed, "[i]t is a general rule of evidence . . . that 'where the subject-matter of a negative

averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party.'" *Denver*, 191 U.S. at 92. The rationale is simple:

> when the opposite party must, from the nature of the case, himself be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is manifestly just and reasonable that the party which is in possession of the proof should be required to adduce it; or, upon his failure to do so, we must presume it does not exist, which of itself establishes a negative.

*Id.* at 92–93 (citations omitted) (finding "error in requiring plaintiffs to assume the burden of showing that the timber was not cut for purposes of construction or repair . . . .").

Similarly, "the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Schaeffer*, 546 U.S. at 57 (citing *Fed. Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 44–45 (1948)). Indeed, "the general rule of statutory construction [is] that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." *Id.* Stated another way, "[t]he general rule of law is, that a proviso carves special exceptions only out of the body of the act; and those who set up any such exception must establish it[.]" *Schlemmer v. Buffalo, Rochester, & Pittsburg Ry. Co.*, 205 U.S. 1, 10 (1907) (quoting *Ryan v. Carter*, 93 U.S. 78, 83 (1876)).

As such, the plaintiff need not "negative[]" the exception to the statute. *Id.* "[I]f the defendant wishe[s] to rely upon [the] proviso, the burden [is] upon it to bring itself within the exception." *Schlemmer*, 205 U.S. at 10. This is especially true where the "exemptions [are] laid out apart from the prohibitions[.]" *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) (with the "exemptions laid out apart from the prohibitions[,] it is no surprise that the" exemptions are "spoken of" as "affirmative defenses . . . After looking at the statutory text, most lawyers would accept that characterization as a matter of course, thanks to the familiar principle that '[w]hen a proviso . . . carves an exception out of the body of a statute or contract those who set up such exception must prove it.'" (quoting *Javierre v. Cent. Altagracia*, 217 U.S. 502, 508 (1910) (citing *Schlemmer*, 205 U.S. at 10))). This "longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side." *Id.* at 91–92 (citing *Schaffer*, 546 U.S. at 57–58).

Capital One, as the defendant, has the burden of pleading it had an authorized purpose to acquire Nayab's credit report. First, the FCRA generally prohibits obtaining a credit report, 15 U.S.C. § 1681b(f), but then provides a numerous and diverse list of exceptions, 15 U.S.C. § 1681b(a). As such, the authorized purposes under § 1681b(a) are matters of exception that the defendant must plead as a defense. While "[o]ften the result of this approach is an arbitrary allocation of the burdens," the distinction here is "valid [because] the exceptions to [the] statute or promise are numerous[,]" so "fairness [] requires that the adversary give notice of a particular exception upon which it relies and . . . bear[s] the burden of pleading [the exception]." *See* 2 McCormick on Evid. § 337 (7th ed.). Second, placing the burden on the

plaintiff would be unfair, as it would require the plaintiff to plead a negative fact that would generally be peculiarly within the knowledge of the defendant.**[3]** *See id.* (because the "proof of the facts is inaccessible or not persuasive, it is [] fairer to act as if the exceptional situation did not exist and therefore to place the burden of proof and persuasion on the party claiming its existence."). Holding otherwise would effectively bar meritorious claims from ever coming to light and frustrate Congress' attempt to protect consumers' privacy.

### 2. Nayab's Complaint states a plausible claim for relief

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

---

**[3]** At oral argument, Capital One argued that Nayab should be aware of the actual purpose behind Capital One obtaining her credit report. Counsel for Capital One stated that the alleged purpose may be included within a code on documentation sent to the consumer. However, this would identify only Capital One's alleged purpose, not necessarily the actual purpose. Moreover, upon questioning at oral argument, counsel for Capital One admitted they were not aware of the actual purpose for obtaining Nayab's credit report. Nor could counsel read any such code, so to inform the court of Capital One's purpose. If counsel for Capital One still do not know the purpose of Capital One's action, how can one expect Nayab to know it?

that a defendant has acted unlawfully." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

Nayab has pleaded facts sufficient to give rise to a reasonable inference that Capital One obtained her credit report for an unauthorized purpose. Nayab pleaded that she did not have a credit relationship with Capital One of the kind specified in 15 U.S.C. § 1681b(a)(3)(A)–(F). Pl's First Am. Compl. ¶¶ 11, 40, 47, 50. Nayab specifically pleaded that, "upon review of her Experian credit report, Plaintiff discovered that Defendant submitted numerous credit report inquiries to Experian." *Id*., ¶ 18. Nayab then puts forward factual assertions which negative each permissible purpose for which Capital One could have obtained her credit report *and for which Nayab could possibly have personal knowledge*:

> (1)   Plaintiff did not initiate any credit transaction with Defendant as provided in 15 U.S.C. § 1681b(a)(3)(A).

> (2)   Plaintiff was not involved in any credit transaction with Defendant involving the extension of credit to, or review or collection of an account of, the consumer as provided in 15 U.S.C. § 1681b(a)(3)(A).

> (3)   Plaintiff is not aware of any collection accounts, including any accounts that were purchased or acquired by Defendant that would permit

Defendant to obtain Plaintiff's credit report as provided in 15 U.S.C. § 1681b(a)(3)(A).

(4)     Plaintiff does not have any existing credit accounts that were subject to collection efforts by Defendant as provided in 15 U.S.C. § 1681b(a)(3)(A).

(5)     Plaintiff did not engage Defendant for any employment relationship as provided in 15 U.S.C. § 1681b(a)(3)(B).

(6)     Plaintiff did not engage Defendant for any insurance as provided in 15 U.S.C. § 1681b(a)(3)(C).

(7)     Plaintiff did not apply for a license or other benefit granted by a governmental instrumentality as provided in 15 U.S.C. § 1681b(a)(3)(D).

(8)     Plaintiff did not have an existing credit obligation that would permit Defendant to obtain her credit report as provided in 15 U.S.C. § 1681b(a)(3)(E).

(9)     Plaintiff did not conduct any business transaction nor incur any additional financial obligations to Defendant as provided in 15 U.S.C. § 1681b(a)(3)(F).

(10)    Defendant's inquiry for Plaintiff's consumer report information falls outside the scope of any permissible use or access included in 15 U.S.C. section 1681b.

*Id*. ¶¶ 24–35.  These are factual allegations that, when taken as true, rule out many of the potential authorized purposes for obtaining a credit report.  Further, Nayab alleges that she discovered Capital One obtained her credit report only upon review of her Experian credit report.  The implication is that she never received a firm offer of credit from Capital One. These allegations, together with Nayab's allegation that Capital One, in fact, obtained her report, state a plausible claim for relief.  These are not simply bare conclusions devoid of facts supporting them.

By contrast, in *Twombly* the Court determined that the plaintiff had not adequately pleaded an antitrust claim where he alleged parallel conduct by the defendants but did not include facts tending to exclude the possibility they acted independently.  *Twombly*, 550 U.S. at 554–55.  The Court decided a claim for restraint of trade under the Sherman Act, 15 U.S.C.A. § 1, must allege facts sufficient for a court to infer an illegal agreement among the defendants and that discovery would reveal evidence of that illegal agreement. *Id*. at 556–57.  The Court decided the plaintiff instead alleged facts that were merely consistent with an illegal agreement (parallel activity among competitors), but more likely explained by lawful market behavior and, therefore, failed to state a claim.  *Id*. at 565, 570.

Similarly, the Court in *Iqbal* held the plaintiff failed to state a *Bivens* claim for purposeful and unlawful discrimination for an alleged policy of holding post-September 11th detainees in the ADMAX SHU facility once

they were categorized as of "high interest." *Iqbal*, 556 U.S. at 682. The Court determined that a showing the defendants' adopted the policies "for the purpose of discriminating" was a necessary factor in stating the *Bivens* claim alleged. *Id.* at 676–77. The Court concluded the plaintiff must, in his complaint, allege facts sufficient to show the defendants purposefully adopted and implemented the policy of classifying detainees as "high interest", so that defendants could then house detainees in the ADMAX SHU, because of the detainees' race, religion, or national origin. *Id.*

The plaintiff's only factual allegations to support his contention were that many Arab Muslim men had been arrested and held at the ADMAX SHU with defendants' approval. *Id.* at 681. The Court decided that because there were more likely explanations for the "disparate, incidental impact" of defendants' activity on Arab Muslims than a discriminatory motive, the plaintiff had not shown, and a court could not infer, that the defendants had acted with a discriminatory state of mind. *Id.* at 683. Further, the Court concluded, because showing the defendants acted "for the purpose of discriminating" was a necessary factor in stating the *Bivens* claim the plaintiff alleged, and the plaintiff had not done so, the plaintiff failed to state a claim. *Id.* at 676–77.

Neither *Twombly* nor *Iqbal* dealt with a plaintiff who had stated a prima facie case in the complaint but had failed to also negative each possible affirmative defense. Here, Nayab asserts a claim under the FCRA, which generally prohibits any person from using or obtaining a consumer's credit report unless for an authorized purpose provided under section 1681b(a). 15 U.S.C. § 1681b(a), (f) ("A person shall not use or obtain a consumer report for any purpose

unless—").**[4]**    When this Court has evaluated similarly drafted provisions of other statutes, it has decided that the provision is an affirmative defense, which a plaintiff need not negative in his complaint. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *see Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1110 (9th Cir. 2018).

In *Van Patten*, the court affirmed a district court's grant of summary judgment in favor of defendants on a claim for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.A. § 227.    *Van Patten*, 847 F.3d at 1049.   The TCPA generally prohibited using automatic dialing systems to make unsolicited advertising phone calls to recipients within the United States, unless the call was "for emergency purposes or made with the prior express consent of the called party."  *Id.* at 1041–42; 47 U.S.C.A. § 227(b)(1).  This court determined that express consent was "not an element of a plaintiff's prima facie case" but was "an affirmative defense for which the defendant bears the burden of proof."  *Id.* at 1044 (citing *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008)).  The Court decided the consumer had given prior express consent and not revoked it.  *Id.* at 1046, 1048.  In *Tourgeman*, this court reviewed provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et*

---

**[4]** "Plaintiff is informed and believes, and thereupon alleges, that Defendant acquired Plaintiff's credit information through an unauthorized inquiry of Plaintiff's 'consumer report' as that term is defined by 15 U.S.C. section 1681a(d)(1)." Pl's First Am. Compl. ¶ 11; "Defendant's inquiry for Plaintiff's consumer report information falls outside the scope of any permissible use or access included in 15 U.S.C. section 1681b." Pl's First Am. Compl. ¶ 35.

*seq*., in affirming a district court's dismissal of the plaintiff's consumer class action. *Tourgeman*, 900 F.3d at 1107. The court stated that "certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Id*. at 1109 (quoting *Schaffer ex rel. Schaffer*, 546 U.S. at 57). The court determined that evidence of the defendant's net worth was a required element of the provision at issue, § 1692k(a)(2)(B), rather than an affirmative defense because the statute required the fact finder to determine the amount in calculating statutory damages. *Id.* The provision limited statutory damaged to "the lesser of $500,000 or one percent of the defendant's net worth," so the defendant's net worth was a prerequisite to establishing statutory damage. *Id*.

The court compared § 1692k(a)(2)(B) with another provision of the FDCPA, section § 1692b(3). *Tourgeman*, 900 F.3d at 1110. Section 1692b(3) prohibits a debt collector from contacting a third party "more than once *unless* requested to do so by" the third party. *Id*. (emphasis added) (citing *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015)). In *Evankavitch*, the Third Circuit reasoned that use of "unless" in § 1692b(3), was "telltale language . . . indicative of an affirmative defense." *Evankavitch*, 793 F.3d at 362. The Third Circuit affirmed a jury verdict for the plaintiff, deciding the plaintiff did not have the burden of disproving an exception in its case-in-chief, but rather the "party seeking shelter in an exception—[the defendant]—has the burden to prove it." *Id*. at 360, 363. The *Tourgeman* court reasoned that if Congress intended to make net worth an affirmative defense or exemption to a rule, like the affirmative defenses in § 1692b(3), it could have used the same telltale language and "limited liability to $500,000 *unless* the defendant could establish that one

percent of its net worth is less than that amount." *Tourgeman*, 900 F.3d at 1110 (emphasis original).

Here, the FCRA § 1681b(f), like the TCPA § 227(b)(1) and FDCPA § 1692b(3), uses the "telltale language" of prohibiting defendant from engaging in conduct "unless" an affirmative defense or exception applies. As with the other provisions, the exceptions to the general prohibition in § 1681b(f) are not elements of Nayab's prima facie case which she must negative to state a claim, rather they are affirmative defenses for which Capital One bears the burden. *Van Patten*, 847 F.3d at 1044; *see Tourgeman*, 900 F.3d at 1109. By alleging facts giving rise to a reasonable inference that Capital One obtained her credit report for a purpose not authorized by statute, Nayab has asserted a plausible claim for relief under the FCRA. *See Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 49 (2d Cir. 1997) ("Although Northrop's complaint does not allege the purpose for which defendants obtained her [credit] report, we believe it would be premature, in light of the liberal pleading principles of Rule 8 of the Federal Rules of Civil Procedure, to dismiss the complaint prior to discovery . . . .").

**REVERSED and REMANDED**.

RAWLINSON, Circuit Judge, concurring in part and dissenting in part:

Although I agree that Plaintiff Freshta Nayab (Nayab) had standing to pursue her action under the Fair Credit Reporting Act, I decidedly disagree that Nayab stated a plausible claim.

As an initial matter, I take issue with the characterization of the pleading standard as an issue of first impression. *See Majority Opinion*, p.4. Rather, this is a routine pleading question that has been definitively addressed in Supreme Court precedent.

The majority rests its analysis on the language of Rule 8(a) of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim." *Id.*, p.17 (quoting Fed. R. Civ. P. 8(a)). From that premise, the majority concludes that Nayab sufficiently stated a claim by alleging that "her credit report was obtained for a purpose not authorized by the statute." *Id.*, p.4. But the analysis is not quite that simple, because the United States Supreme Court in the seminal cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), expounded considerably on the pleading requirements of Rule 8(a).

In *Twombly*, the plaintiffs filed an antitrust action against local exchange telephone and wireless carriers. *See* 550 U.S. at 550. The complaint alleged:

> In the absence of any meaningful competition between the [carriers] in one another's markets, and in light of the parallel course of conduct that each engaged in to prevent competition from [carriers] within

their respective local telephone and/or high speed internet services markets and the other facts and market circumstances alleged above, plaintiffs allege upon information and belief that [the carriers] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another.

*Id.* at 551 (citation and footnote reference omitted).

The district court dismissed the complaint for failure to state a claim, but the Second Circuit reversed. The Supreme Court in turn reversed the Second Circuit, agreeing with the district court that the complaint failed to state a claim. *See id.* at 552–53.

The Supreme Court proceeded to clarify the pleading standards under Rule 8(a). The Court acknowledged that Rule 8(a) only requires a "short and plain statement of the claim." *Id.* at 555. Nevertheless, the Court clarified that a "short and plain statement of the claim" requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted). The Court emphasized that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

The Supreme Court reiterated this analysis in *Iqbal*. In that case, a pretrial detainee asserted various constitutional violations against the former Attorney General (AG) and the

Director of the Federal Bureau of Investigation (FBI).  The complaint alleged that the AG and FBI Director "adopted an unconstitutional policy that subjected [the detainee] to harsh conditions of confinement on account of his race, religion or national origin."  556 U.S. at 666.  The defendants moved to dismiss the complaint for failure to state a claim, and the district court denied the motion. *See id.* at 669.  While appeal was pending before the Second Circuit, the Supreme Court decided *Twombly*.  Applying *Twombly*, the Second Circuit agreed with the district court that the pleading was adequate to state a claim. *See id.* at 669–70.  However, the Supreme Court reversed, holding that the pre-trial detainee did not sufficiently "plead factual matter that, if taken as true, states a claim that [defendants] deprived him of his clearly established constitutional rights." *Id.* at 666, 670.

As in *Twombly*, the Supreme Court again acknowledged that Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 677–78.  And again the Supreme Court explained that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citation omitted).  The Supreme Court further clarified:  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citations and internal quotation marks omitted).

The Supreme Court left no doubt that a complaint must contain allegations of some substance.  The Supreme Court emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  Against this

analytical backdrop, the Supreme Court concluded that the allegations of Iqbal's complaint did not state a plausible claim. *See id.* at 680.

The Supreme Court identified the following allegations as insufficient under Rule 8:

- That the defendants "knew of, condoned and willfully and maliciously agreed to subject" Iqbal to harsh conditions of confinement;

- That the defendant's actions were taken "as a matter of policy, solely on account of [Iqbal's] religion, race and/or national origin";

- That the actions were not based on any "legitimate penological interest";

- That the AG was the "principal architect of [the] invidious policy"; and

- That the FBI Director was "instrumental in adopting and executing" the policy.

*Id.* at 680–81 (citations and internal quotation marks omitted).

The Supreme Court described these allegations as "bare assertions, much like the pleading of conspiracy in *Twombly*, amount[ing] to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim." *Id.* at 681 (citation and internal quotation marks omitted). The Court further observed that "the allegations [were] conclusory and not entitled to be assumed true." *Id.* (citation omitted).

Measuring the allegations in this case against the *Twombly/Iqbal* standard reveals a patent lack of adequate pleading. The majority deems it sufficient that Nayab alleged that the defendant "obtained [her credit report] for a purpose not authorized by the statute." *Majority Opinion,* p.4. Indeed, the majority goes so far as to conclude, without citation to any authority, that Nayab had no obligation to plead the unauthorized purpose for which the credit report was obtained. *See Majority Opinion*, p.16. However, not only is that conclusion inconsistent with *Twombly* and *Iqbal*, it diverges from the specific allegations in cases that have been litigated under the Fair Credit Reporting Act. For example, in *Syed v. M-I, LLC*, 853 F.3d 492, 498 (9th Cir. 2017) the plaintiff "[s]pecifically . . . allege[d]" that the Disclosure Release provided by a prospective employer violated the Fair Credit Reporting Act by including a liability waiver in addition to the disclosure, when the statute required "that the disclosure document consist 'solely' of the disclosure." *Id.* (citing § 16816(b)(2)(A)(i). Similarly, in *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1331–32 (9th Cir. 1995), the plaintiff not only alleged that the credit reporting agency generated an inaccurate credit report, she identified the specific inaccuracies.

The majority delineates allegations from the complaint purporting to "negative each permissible purpose for which Capital One *could have* obtained her credit report *and for which Nayab could possibly have personal knowledge.*" *Majority Opinion*, p.22 (second emphasis in the original). However, as discussed, these speculative allegations fall short of the specific allegations reflected in our precedent. *See e.g., Syed*, 853 F.3d at 498; *Guimond*, 45 F.3d at 1331–32. And under the precepts of *Twombly/Iqbal*, no fair inference of liability follows from these speculative assertions. *See Twombly*, 550 U.S. at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level . . . [and] the pleading must contain something more than a statement of facts that merely creates a *suspicion* of a legally cognizable right of action . . .") (citations, alterations, footnote reference, and internal quotation marks omitted) (emphasis added); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citation and internal quotation marks omitted). At best, the assertions highlighted by the majority "are merely consistent with [the] defendant's liability."  *Id.* (citation and internal quotation marks omitted).  Tellingly, the majority characterizes plaintiff's claim in terms of "possibility."  *Majority Opinion*, p.22.  However, *Iqbal* clearly held that a mere possibility of liability does not plead a plausible claim.  *See Iqbal*, 556 U.S. at 678.

Rather than assessing compliance with the *Twombly/Iqbal* pleading standard, the majority opinion relies on cases addressing the burden of production and the burden of proof.  *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (addressing the burden of proof); *Alaska Dep't of Envtl. Conserv. v. E.P.A.*, 540 U.S. 461, 493–94 (2004) (discussing "the burdens of production and persuasion"); *United States v. Denver & Rio Grande R.R Co.*, 191 U.S. 84, 91–92 (1903) (commenting on the burden of proof); *Schlemmer v. Buffalo, Rochester, & Pittsburg Ry. Co.*, 205 U.S. 1, 10 (1907) (explaining the burden-of-proof requirement for an exception to a statutory provision); *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) (same); *see also Majority Opinion*, p.20 (citing an evidence treatise).  These cited references not only fail to address Rule 8(a), they were largely decided before *Twombly* and *Iqbal*, in two instances approximately a

century previously.   The majority's reliance on these references is untenable.  The same is true for the majority's reliance on the Second Circuit's decision in *Northrop v. Hoffman of Simsbury Inc.*, 134 F.3d 41 (2nd Cir. 1997), decided a decade before *Twombly,* and *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), decided two decades before *Twombly*.

The majority seeks to distinguish *Twombly* and *Iqbal* on the basis that they did not deal "with a plaintiff who had stated a *prima facie* case in the complaint but had failed to also negative each possible affirmative defense."  *Majority Opinion*, p.25.  But this attempt to distinguish *Twombly* and *Iqbal* simply begs the question by presupposing that a *prima facie* case has been stated.   This presupposition blithely ignores the requirements set forth in *Twombly* and *Iqbal* to state a plausible claim.  *See Iqbal*, 556 U.S. at 678 (noting that no plausible claim is made if the complaint "tenders naked assertions devoid of further factual enhancement").  This language is fatal to Nayab's so-called *prima facie* case because her allegations contain only "naked assertions" parroting the language of the statute in a "formulaic recitation of the elements of a cause of action."  *Id.*

The majority's reliance on *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) and *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1110 (9th Cir. 2018), is similarly unavailing because neither case involved pleading standards under Rule 8 or grapples with the *Twombly/Iqbal* requirements.  Like the other cases cited by the majority, these two cases discussed the burden of proof rather than pleading standards.  *See Van Patten*, 847 F.3d at 1044 ("Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant *bears the burden of proof*. . . .")

(citation and footnote reference omitted) (emphasis added); *see also Tourgeman*, 900 F.3d at 1109 ("*When allocating the burden of proof*, the touchstone of our inquiry is, of course, the statute. . . .") (citation and internal quotation marks omitted) (emphasis added).

Finally, and without citation to any authority, the majority states that "the defendant [Capital One] has the burden of pleading it had an authorized purpose to acquire Nayab's credit report," because the authorized purposes under the statute must be pled as defenses. *Majority Opinion*, p.20. However, the Supreme Court has expressly placed the burden of pleading a plausible claim squarely on the plaintiff rather than on the defendant. *See Twombly*, 550 U.S. at 554–55. As Nayab offered only conclusory allegations and "formulaic recitation of the elements of a cause of action" under the Fair Credit Reporting Act, she failed to state a plausible claim. *Id.* at 555.

In sum, although Nayab had standing to assert her claim, I respectfully, but emphatically, disagree with the conclusion that she stated a plausible claim. I would affirm the district court's ruling on this issue.