IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of Marriage of | ) | |
| | ) | No. 37790-3-III |
| VANESSA M. WEAVER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| RICHARD J. WEAVER, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Vanessa Weaver challenges the trial court's order denying her request to relocate, with her young sons, to Hoquiam from Wenatchee. She contends that the trial court ignored the rebuttable presumption in favor of relocation and failed to consider her interests in relocation. We disagree and affirm the trial court.

FACTS

This appeal arises from the parentage by former husband and wife, Richard and Vanessa Weaver, of two sons, David and Jesse. The boys' names are pseudonyms. The dissolution decree's parenting plan awarded Vanessa primary placement of the two boys.

A year thereafter, Vanessa sought to move from Wenatchee to Hoquiam. We address the trial court's denial of the request to relocate with the boys.

In a parental relocation case, both court levels must review numerous factors, which, in turn, renders a flood of facts relevant. Thus, even published decisions involving this topic run long. *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 402-03, 483 P.3d 815 (2020); *In re Marriage of McNaught*, 189 Wn. App. 545, 555, 359 P.3d 811 (2015); *In re Marriage of Kim*, 179 Wn. App. 232, 244, 317 P.3d 555 (2014); *In re Marriage of Fahey*, 164 Wn. App. 42, 58, 262 P.3d 128 (2011).

On April 25, 2017, Vanessa and Richard Weaver dissolved their seven-year marriage. The couple's two sons, born respectively in 2010 and 2012, each have special needs. The older son, David, suffers allergies, asthma, and Li-Fraumeni Syndrome (LFS), a paternal genetic syndrome predisposing him to cancer. The younger son, Jesse, has autism.

Richard Weaver has lived in Wenatchee for fifteen years and the surrounding environs longer. Since 1996, Richard has owned Westgate Communications, LLC, which provides lifeline telephone Internet service for Upper Lake Chelan. Because of his job, relocation for Richard is not feasible.

Vanessa Weaver is an art teacher. Vanessa holds a substitute teacher's certificate that allows her to substitute teach at any grade level on any subject. She also has a

professional teaching certificate with an endorsement to teach at the elementary level and to be an art specialist for grades K-12.

At the time of their divorce, the parties entered an agreed parenting plan that granted Vanessa and Richard Weaver joint decision making. Pursuant to the plan, the boys lived primarily with Vanessa, and Richard enjoyed the standard visitation schedule.

The agreed marital dissolution decree awarded the Wenatchee family home to Vanessa Weaver so that the boys would continue to reside in the home. The decree, however, required Vanessa to refinance the home, in her name alone, by February 28, 2018, or vacate the residence. In the event Vanessa failed to refinance the home, the Weavers would sell the home at an agreed price or a price established by the court. As of February 28, 2018, Vanessa Weaver remained unable to refinance the home.

Vanessa Weaver worked as an art teacher at Lincoln Elementary School in the Wenatchee School District. David, the older son, attended Lincoln Elementary. Jesse attended a self-contained classroom in another school. Vanessa advocated for him to attend Lincoln Elementary so that the brothers could attend the same school and she would be available to assist Jesse.

In the spring of 2018, the school district notified Vanessa that her work would be reduced to half-time from her current 0.8 position. As a result, Vanessa gave notice of her resignation effective at the end of the 2017-18 school year. Vanessa believed she could not live on her remaining income.

Vanessa Weaver applied for a full-time art teacher position at Wenatchee High School, but did not receive an offer. Vanessa's job opportunities grew scarcer as the months progressed into May 2018. She concluded that the western side of Washington State afforded more possibilities.

In February 2018, Richard Weaver learned from David that he and his mother might move. In June 2018, Vanessa Weaver spoke with Richard about the potential relocation, including possible visitation arrangements and arrangements for selling the family home. Richard eventually objected to any move of the sons to Western Washington.

We only review the trial court's decision entered after a three-day trial on Vanessa Weaver's application for court permission to relocate with her two sons. Nevertheless, the case includes a long and germane procedure leading to the trial.

On August 30, 2018, Richard Weaver filed an ex parte motion for a restraining order to prevent Vanessa from relocating. Richard alleged that Vanessa, on August 29, 2018, told him that she planned to live in western Washington by September 10. According to Richard, Vanessa reported that she would live in a fifth wheel trailer on her mother's home property while she searched for a job and her mother cared for the children. Vanessa insisted she needed to move in order to obtain a full-time teaching position. The trial court granted Richard's ex parte motion and entered an order which prohibited Vanessa from relocating with the children, temporarily placed the boys with

4

Richard, required the boys' enrollment in Wenatchee schools, prohibited Vanessa from contact with the boys, and set a hearing date for September 10, 2018.

On August 31, 2018, Vanessa filed a notice of intent to relocate and a motion to terminate the restraining order. As part of the motion to terminate the restraining order, she asked that the children be enrolled in online school. In the notice of intent to relocate, Vanessa stated that she intended to buy property in western Washington and build a home with her share of the proceeds from the sale of the Wenatchee residence. She intended to live in a trailer while the house was being built.

Richard Weaver objected to the move and requested primary custody should Vanessa choose to move. Richard described Vanessa's plans to move as vague because the plans kept changing and she disclosed no firm date for the move. He highlighted that Jesse experienced autism, but Vanessa planned to enroll both boys in a virtual school.

On September 6, 2018, Vanessa Weaver moved for a temporary order permitting her to relocate with the children. Vanessa cited the legal presumption that a custodial parent should be permitted to relocate with a child. She accused Richard of alcoholism and emotional struggles.

On September 10, 2018, the Chelan County Superior Court held a hearing only regarding Richard Weaver's application for a restraining order prohibiting the children's move. During the hearing, Vanessa testified that she planned to substitute teach for a year so she could explore opportunities in the community to where she would move. She

5

explained that substitute teaching would allow her to network and review prospective jobs. Vanessa promoted the number and proximity of school districts in western Washington compared to Wenatchee, such that she enjoyed more job prospects on the west side of the State.

At the conclusion of the September 10 hearing, the superior court precluded any move by the sons for the time being because of Vanessa's lack of a concrete plan. The court expressed concern about the boys living in a trailer. If Vanessa chose to continue to live in Wenatchee, the residential arrangement under the original parenting plan would be reinstated. The court suggested that, should Vanessa develop "a solid plan," the court would reconsider its decision on relocation after an evidentiary trial. Report of Proceedings (RP) at 26-27.

On November 6, 2018, Vanessa Weaver filed a proposed modification to her motion for a temporary order allowing her to relocate. She declared that she now had concrete relocation plans. According to these plans, she had enrolled the children in a Port Townsend elementary school, and she had arranged for after school childcare at the YMCA. Vanessa had registered to become a substitute teacher in the Port Townsend school district. The family of three would live in a fifth wheel trailer in a mobile home park. Vanessa asserted that Richard's history of alcohol abuse, emotional and mental instability, and emotional abuse of her placed the children at risk for serious harm.

Vanessa also requested appointment of a guardian ad litem to investigate and report to the court about her potential relocation.

On November 29, 2018, Richard filed a responsive declaration in which he denied any alcohol abuse. He also denied threatening or verbally abusing Vanessa. Richard declared that he wished to follow plans recommended by the boys' respective teachers for the sons. He enjoyed a large extended family in the Wenatchee area, who agreed to assist with childcare until he could hire a nanny. He agreed to the appointment of a guardian ad litem.

During a December 3, 2018 hearing, Vanessa Weaver informed the superior court that her mother had recently suffered an accident and, because of injuries in the accident, planned to move with Vanessa and the boys to property on which they would build a home. The court asked Vanessa about her job status. Vanessa responded that she filed for substitute teacher work with Port Townsend school district and, once she lived in the town, the school would permit her to serve as a substitute.

During the December 3 hearing, Richard Weaver complained again about the vagueness of Vanessa's plans. Richard highlighted that Vanessa still lacked a job. He suggested that Vanessa could not build a home herself as she had never completed remodeling projects in the Wenatchee family home. Richard agreed to permit Vanessa to continue to reside in the Wenatchee family home despite her lack of refinancing. He noted that Vanessa had failed to apply for jobs locally despite the availability of

7

employment and a lower cost of living in Wenatchee. Richard claimed that Vanessa had not procured doctors or dentists for the boys in Port Townsend.

The superior court denied Vanessa Weaver's motion for a temporary order for relocation. The court noted that Vanessa still lacked housing and employment despite the special needs of the children. The court appointed a guardian ad litem to determine the best interest of the children.

Seven months later and on July 16, 2019, Vanessa again moved for a temporary order allowing relocation with the children pending the permanent relocation trial. According to the motion, Vanessa had obtained full-time employment as an art teacher in Hoquiam and had located schools in Hoquiam for each son. Her employment removed the need for day care before and after school because the boys could be with Vanessa during this time. Vanessa had obtained a rental home within 1.5 miles of work. She averred to the accessibility of autism support agencies within ninety minutes and claimed the presence of twelve close family and friends within two hours' distance.

On July 30, 2019, before any hearing on Vanessa Weaver's new motion, guardian ad litem Ruth Esparza filed a report of her investigation. The report described visits, including surprise visits, to each parent's home and included interviews with school personnel, medical providers, and the two boys. Esparza reported that Vanessa's home appeared cluttered with pet hair scattered throughout. Son David told Esparza that he enjoyed his mom's home, however, he would prefer to live with his father.

Ruth Esparza also visited Richard's apartment and found the residence organized and clean. During the visit, David informed Esparza that he had never seen his dad consuming alcohol. Esparza later conducted a surprise visit to Richard's home and did not discover any signs of alcohol.

Guardian ad litem Ruth Esparza met with three teachers from the boys' schools. They reported that, while in the care of their mother, both boys accumulated nineteen tardies to school. According to the teachers, the tardies discombobulated David's school day. On the days that the boys appeared late, they looked disheveled. On one day, Jesse wore his clothes backward. David reported to his teachers that he and his brother arrived late to school because of his mother's late sleeping and his difficulty in preparing Jesse for school. The teachers worried about the mother placing a responsibility on David for preparing Jesse for school. The school placed David on probation.

The teachers reported to guardian ad litem Ruth Esparza that Vanessa often fails to timely retrieve the boys from school, while the father always waits outside the school when the school ends for the day. Jesse's teachers told Esparza that an online school setting would not permit Jesse to thrive because of a lack of opportunities to socialize. Also, Jesse needed routine.

In the conclusion to her report, guardian ad litem Ruth Esparza recommended that Richard Weaver gain primary placement of the boys because of his consistency. Esparza suggested that the father be awarded the family home.

9

On August 2, 2019, the superior court heard oral argument on Vanessa's second request for a temporary order permitting her to relocate with the boys until the concluding trial. During the hearing, Vanessa explained that she would begin work in Hoquiam on August 22. Guardian ad litem Ruth Esparza addressed the court and expressed her opinions that the boys should not relocate to Hoquiam and that the court should award Richard primary placement.

After the August 2 hearing, the superior court concluded that it, after an evidentiary trial, would unlikely approve relocation after considering the factors listed in RCW 26.09.520. The court also concluded that Richard Weaver would likely rebut the presumption in favor of relocation. The superior court denied the temporary relocation and ordered that the 2017 parenting plan remain in place. If Vanessa chose to relocate, Richard would receive primary placement of the two young sons.

On August 23, 2019, Richard filed a petition to modify the parenting plan and asked for primary placement of the children with him. Richard claimed that Vanessa had moved to Hoquiam and left the children in the care of her mother in Wenatchee in violation of the order awarding him primary placement should Vanessa relocate.

On September 5, 2019, Richard Weaver filed a motion for contempt. He averred that, under the parenting plan, Vanessa and he shared joint decision making on educational decisions and yet she had enrolled David in a different school. He repeated

that, in violation of a court order, Vanessa left the boys with their grandmother in Wenatchee while moving to Hoquiam.

In response to Richard's motion to modify the parenting plan and motion for contempt, Vanessa Weaver declared that she commuted to and from Wenatchee and Hoquiam so that the boys could remain in the family home without a needless transfer or exchange. Vanessa averred that she drove to Hoquiam on Monday morning for work and returned Tuesday afternoon. She returned to Hoquiam on Wednesday morning and returned to Wenatchee on Thursday or Friday depending on the requirements of work. Her mother stayed with the children while she was absent.

On September 6, 2019, the superior court entertained argument on the motion for contempt. The superior court ruled that Vanessa's decision to commute between Hoquiam and Wenatchee would not serve as a basis for finding her in contempt. The court, however, held Vanessa in contempt for withdrawing David from his elementary school without the consent of Richard. The court gave Vanessa forty eight hours to reenroll David in his former elementary school. Finally, the court reinstructed Vanessa that, if she continued to work for the Hoquiam School District, the children must be placed with Richard. The court granted Vanessa two weeks to resign from employment with the Hoquiam School District. Vanessa continued to work in Hoquiam and, in September 2019, the two boys went to live with Richard.

On October 28, 2019, the superior court heard argument regarding a temporary parenting plan. The court ruled that the parties should have joint decision making. The court affirmed Richard Weaver as the primary care giver and granted Vanessa two weekends a month for visitation.

On June 12, 2020, Vanessa Weaver moved to amend the temporary parenting plan to grant her sole decision making authority and primary placement of the children. Vanessa alleged that Richard had neglected the children, withheld the children from her, and refused to engage in joint decision making. With her motion, Vanessa submitted a declaration in which she stated that she had twice seen bruising on Jesse, which discoloring appeared to be intentionally inflicted. On June 25, 2020, Vanessa filed a motion for contempt.

On June 29, 2020, the superior court entertained argument regarding the motion for an amendment to the temporary parenting plan. The court noted that the relocation trial was scheduled to begin in five weeks. Therefore, the court denied the motion other than to award summer visitation to Vanessa.

PROCEDURE

Hearings on temporary motions ceased and a three-day bench trial on Vanessa Weaver's request for relocation and Richard's petition to modify the parenting plan commenced on August 10, 2020. By that date, Vanessa had been employed with the Hoquiam School District for three weeks.

During the trial, Richard Weaver emphasized Vanessa's habit of tardiness and her failure to follow plans. Richard related that, in 2019, the entire family took a trip to the east coast for David's annual appointment at the National Institute of Health (NIH). Vanessa, who stayed at a hotel across the street from the NIH, arrived late to the appointment. Vanessa also insisted on flying with the boys on a separate flight because Richard purportedly caused conflict. Richard took a separate flight to Seattle and planned a connecting flight to Wenatchee. Before he boarded the plane for Wenatchee, Vanessa called Richard and told him that she was stranded in Seattle and unable to rent a car. Richard forewent his flight, rented a car, and drove the boys and Vanessa home, arriving at 3 a.m.

The trial court admitted as exhibits pictures of Richard's new home, which photographs showed no signs of clutter. Richard averred that the family home was messy and cluttered when Vanessa lived therein. He did not explain why, if the home was muddled, he did not tidy and clean the home rather than waiting for Vanessa to perform the tasks.

During trial testimony, Richard Weaver denied Vanessa's allegations that he physically abused the boys. In response to an earlier allegation, he showed a photograph of one of the boys to a teacher and a physician assistant. The teacher concluded that the bruise likely resulted from a piece of playground equipment. The physician assistant,

with little concern, deemed the blemish on the boy a yeast infection. Eventually, the bruise or rash disappeared.

Richard Weaver testified to a second occasion when Vanessa reported bruising on Jesse. Richard saw no bruising, but he took Jesse to an urgent care facility the same day as Vanessa's complaint. On pulling into the facility's parking lot, he received a call from Child Protective Services (CPS) asking for his address so the agency could speak to him about alleged bruising. Richard told CPS that he and Jesse were at the care facility. The physician at the facility found no bruising on Jesse.

During his testimony, Richard Weaver mentioned that, on the day after the call from CPS, he met with a CPS investigator, the school counselor, and Jesse's teacher. CPS informed Richard that it planned a month-long investigation into the suspected bruising. Richard showed the CPS investigator the picture he had received from Vanessa five or six months earlier. Richard explained that the mark on Jesse resulted from either a bruise caused by playground equipment or a yeast infection. On the following day, the CPS investigator met with Richard and the two boys. The investigator thereafter closed the investigation.

According to Richard Weaver, son David is more relaxed and Jesse has improved in school since living with him. Richard enrolled Jesse in speech classes. Richard maintained frequent contact with his sons' teachers. In the last annual individualized education plan meeting, Jesse's teachers informed Richard that Jesse had improved in

14

both speech and attention span. Jesse was gradually integrating into a regular classroom. During his testimony, Richard emphasized his large extended family and the activities he provided the boys, including visiting museums, hiking trails, and attending hockey games. He holds familiarity with services available for his son in the Wenatchee area.

Guardian Ad Litem Ruth Esparza testified at trial regarding the results of her investigation. Esparza repeated testimony from an earlier hearing and continued to recommend that both children live with Richard with visitation for Vanessa.

During her testimony, Ruth Esparza questioned Vanessa Weaver's insistence that she take Jesse on the trips to Maryland for David's examinations by NIH and, in turn, Vanessa's persistence that she alone accompany David to the NIH facility, while Richard tended to Jesse. Richard suffered from the same rare condition and should have accompanied David on his appointments. Esparza criticized Vanessa's desire to enroll Jesse in an online academy. According to Esparza, Jesse's teachers wanted Jesse to attend school in person for needed socialization.

Counsel for Richard Weaver questioned guardian ad litem Ruth Esparza:

> Q. Were you aware in September of 2019 that Ms. Weaver was hired full time in Hoquiam at that point?
> A. I think so, yes. I believe.
> Q. And were you aware that even though she was hired full time in Hoquiam and working over there, she left her children with her mother instead of Mr. Weaver when she was off working?
> A. I was not aware of that.
> Q. Assuming that to be the case, do you think that's evidence of bad faith on the part of the mother here?

A.  Yes.

RP at 365.

Ruth Esparza testified that children with autism need stability and routine.  Based on reports of David's preparing Jesse for school, Esparza envisioned chaotic mornings without an established routine if Vanessa recovered primary placement.

During her trial testimony, Vanessa Weaver testified to her care for her sons while she enjoyed primary placement.  She conceded that situations arose when she could not arrive at the boys' schools when classes ended.  Vanessa denied that she ever directed David to assist Jesse in preparing for school.

Vanessa Weaver testified that she lived in a "little attic apartment" in Hoquiam that lowered her cost of living significantly.  RP at 511.  Her teaching at the Hoquiam school district ended the need for childcare as the boys could go to Vanessa's school in the morning with her and then a school bus would transport them to their elementary school.  She averred that she could not break her employment contract with the Hoquiam School District because she would gain a blemish on her professional reputation and encounter difficulty finding other teaching jobs.

On cross-examination, Vanessa Weaver acknowledged that, as of 2018, she had no physician or dentists retained for the boys in western Washington.  She answered that she had requested two pediatricians for referrals and not received any.

16

Vanessa Weaver declared, during her trial testimony, that she bought property between Graham and Eatonville approximately seventy miles from her current residence. She planned to build a home on the land. She would then need to find a new job, and, assuming the court allowed the children to move with her to Hoquiam, the children would move again on the completion of the home.

At the conclusion of the trial, the superior court ruled from the bench and denied Vanessa Weaver permission to move with the children. We quote some of the oral ruling because of its assistance in resolving whether sufficient evidence supports the trial court's findings and the court's conclusions as to whether statutory factors favor or disfavor relocation.

The superior court first highlighted testimony from guardian ad litem Ruth Esparza:

> The guardian ad litem testified that she believed that Mr. Weaver was more stable than Mrs. Weaver and Ms. Weaver tended to be chaotic. *The guardian ad litem said what I think everyone agrees with, that autistic children especially need routine and stability and that the father is stable and the mother is less stable.*

RP at 721 (emphasis added).

During its oral ruling, the superior court observed that, according to Ruth Esparza, the mother often failed to timely deliver and retrieve the boys from school, whereas Richard performed like Swiss "clockwork." RP at 721. The court considered the amount

of tardies that David accrued when placed with Vanessa and the tardies resulting in

David's probation at school.

After making these observations, the superior court reviewed the eleven factors

listed in the parental relocation statute. As to factor 1, which includes the strength of the

relationship between the children and the respective parents, the court commented that

strength of the relationships is equal between the parents and both children. The court

remarked as to consistency and stability:

> And both parents are extremely involved in the children's lives, and
> both parents are very aware of the children's needs. And as I indicated,
> the children have a strong bond with not only both parents but with each
> other, as you would expect brothers to have and they do.
> And in terms of the stability of relationship with each parent, again,
> the Court feels that the father's relationship with the children is strong.
> It's very stable. It's very steady. And the mother's relationship, I think it
> could be classified in those terms as well, but that she is less consistent
> with them than the father is.

RP at 722.

In its oral ruling, the superior court considered factor three, stating:

> Factor 3 is whether disrupting the contact between the child and the
> person seeking relocation would be more detrimental to the child than
> disrupting contact between the child and the person objecting to the
> relocation. Given what I've already said and also how the children are
> doing currently, *this court believes that the disruption to the children will
> be greater and more detrimental if the contact between them and their
> father is disrupted*.
> The father's very stable and consistent. The children are enrolled in
> school in Wenatchee and would have to change schools if they're forced to
> relocate with the mother. And Wenatchee is pretty much the only home
> that these children have ever known.

18

RP at 723 (emphasis added).

As to factor 4, whether any parental misconduct limits placement and visitation,

the superior court remarked:

> There's allegations in this case of alcohol abuse of the father and maybe some verbal abuse and some emotional abuse. The Court does not believe that those are supported by the evidence.

RP at 723.

Relevant to factor six, the age and needs of the boys, the superior court stated:

> The testimony is that [David] is ten years old, I believe, and he's a very gifted student. And the Court believes that his educational needs have been and will continue to be met here in Wenatchee. And the Court believes that [Jesse's] emotional needs are better met with him remaining here in Wenatchee as well with his father.
>
> [Jesse] is eight years old. . . . I think everyone's on—in agreement in terms of what autistic children need is routine and structure. And the Court believes although it would be possible for the mother to provide that at some point with the relocation, it's unknown how long that would take.
>
> The professionals around [Jesse] in this community know him. They've worked with him. They're aware of what he needs to be successful. The testimony is that he's thriving here. And the court is not convinced he would get the same care if he moved because basically he would have to start all over again getting the connections and the professionals surrounding him in a new community.

RP at 725.

The superior court addressed factor 7, the improvement in the quality of life of the

parents and children because of the relocation:

> The court believes, frankly, that the mother's quality of life will likely improve because she'll be—she's working as a full-time teacher. But

again, the opportunities and resources available to the children would not necessarily be better for the reasons I've already stated.

RP at 725-26.

As to factor 8, the availability of alternative arrangements, the superior court

remarked:

There are no other arrangements available to foster and continue the objecting person's relationship and contact with the children.

Clerk's Papers (CP) at 124. The court added:

Unfortunately, the mother's chosen to move five to seven hours away. That's not really any—if the Court allowed that to happen, basically the father would be reduced to seeing the children every other weekend and then maybe on Zoom, which is not substitute—not an adequate substitute for seeing them face-to-face.

RP at 726.

In its oral ruling the superior court stated with regard to factor 9, the desirability

and feasibility of the other parent to relocate:

[T]he father has a long time—term business here in the Chelan County area, and it's simply not feasible for him to relocate. It would be a lot easier for the mother to relocate than the father would.

RP at 726.

On September 23, 2020, the superior court entered an order and written findings of

fact. Because of their importance to the appeal, we quote the findings at length:

5. Factors for / against move with children
. . . The children . . . [p]reviously spent most of their time with the relocating person until September of 2019 when the court ordered that the

children spend most of their time with the objecting party and based on the factors below the court concludes that the planned move would cause more harm to the children than good to the children and the person who wants to move.

Factors:

a. Relationships: The children's relationships with each parent, any siblings, and other important people in the children's life. . . . Both parties have a strong relationship with the children but the parties parenting styles are different. Both parents are involved with the needs of the children. The father has more stability than the mother when it comes to the care of the children.

b. Agreements: Findings: There . . . were not agreements between the relocating and objecting persons about moving with the children.

c. Contact: Findings: Disrupting the children's contact with the relocating person . . . would not be more harmful to them than disrupting their contact with the objecting person. The children have lived in Wenatchee the majority of their lives and have all the care present for their physical, mental, and emotional well being and educational needs. Relocating the children would require that new contacts in all areas of the children's development be located.

d. limitations: Findings: The current parenting/custody order . . . does not include limitations under RCW 26.09.191 on a parent. The court finds that there is no evidence of any alcohol abuse on the part of the father.

e. Reasons for moving: Findings: The reasons for moving . . . were . . . given in good faith. The financial need of the mother is better met at her present location and employment.

f. Reasons for objecting: Findings: The reasons for objecting to the move . . . were . . . given in good faith. The father did not object for personal selfish reasons but instead for the benefit of the children.

g. Children: Findings: Allowing or preventing the move would affect the children's physical, educational, and emotional development, considering their age, developmental stage, and needs (including any special needs) as follows:

If move is allowed: As indicated in paragraph 3, a relocation would require the finding and hiring and retention of medical doctors, specialists and others pertaining to the children and particularly the autism of the youngest child. The oldest child is a gifted child in advanced classes at his present school. Autistic children need routine and structure which is

provided by the father although the mother may have eventually been able to provide such for the youngest child.

If move is not allowed: The children's routine and structure are presently in the best interest of the children here in Wenatchee. The father is fully capable of taking care of the children on a full-time basis. The father meets all of the children's physical, educational and emotional development when placed with him.

h. Quality of life: The quality of life, resources, and opportunities available to the children and the relocating person in the current location and in the new location.

Findings: The mother's resources will increase presently residing on the west side of the state but there is no advantage regarding the quality of life and opportunities available to the children where the mother resides.

i. Other arrangements: Other arrangements available to foster and continue the objecting person's relationship and contact with the children. Findings: There are no other arrangements available to foster and continue the objecting person's relationship and contact with the children.

j. Alternatives: Alternatives to the planned move, and whether it is possible or desirable for the objecting person to move too.

Findings: There are no alternatives to the planned move, and it is not desirable or possible for the objecting person to move given his self-employment for several years in the Wenatchee area.

k. Financial: The financial impact and logistics of moving or not moving (for example, the timing, cost, and how the move would happen). Findings: As indicated in paragraph h, the mother has obtained full time employment where she currently resides.

6. Changes to parenting/custody order

Change—There are valid reasons to change the final parenting/custody order because: . . . the court is not allowing the children to move and the person who asked to move with the children is moving without the children. The new Parenting Plan or Residential Schedule changes the person with whom the children live most of the time.

CP at 123-25 (boldface, underline, and italics omitted). In the written order, the superior court expressly declared that it had applied the presumption in favor of relocation, but that Richard had rebutted it.

22

LAW AND ANALYSIS

Child Relocation

On appeal, Vanessa Weaver challenges the superior court's denial of her motion

for relocation with her children. She particularly claims that the court failed to apply the

requisite presumption in favor of relocation. We conclude that the trial court recognized

and applied the presumption and did not abuse its discretion in denying Vanessa's

motion.

In 2000, the Washington Legislature enacted the Washington child relocation act

(CRA), RCW 26.09.405-.560. The act imposes notice requirements and sets standards

for relocating children who are the subject of court orders regarding residential time. *In*

*re Custody of Osborne*, 119 Wn. App. 133, 140, 79 P.3d 465 (2003). "Relocate" under

the act means "a change in principal residence either permanently or for a protracted

period of time." RCW 26.09.410(2). A person "with whom [a] child resides a majority

of the time" must provide notice of an intended relocation to every person entitled to

residential time with the child. RCW 26.09.430. If a person entitled to residential time

objects, the person seeking to relocate the child may not do so without a court order.

RCW 26.09.480(2).

The CRA shifts the analysis away from only the best interests of the child to an

analysis that focuses on both the child and the relocating person. *In re Marriage of*

*Horner*, 151 Wn.2d 884, 887, 93 P.3d 124 (2004). The relocating person must provide

his or her reasons for relocating, and the court must operate under the presumption that the intended relocation will be permitted. *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 402-03 (2020). This presumption accords with the traditional principle that "a fit parent acts in his or her child's best interests, including when that parent relocates the child." *In re Marriage of McNaught*, 189 Wn. App. 545, 553 (2015). To rebut the presumption, the party objecting to the relocation has the burden of demonstrating that "the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person." *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 403 (2020).

Two divisions of this court disagree as to how a parent qualifies for the presumption in favor of relocation. In *In re Marriage of Fahey*, 164 Wn. App. 42, 58 (2011), Division II held that only the parent designated in the parenting plan as the custodial parent benefits from the presumption. Our division, based on the language of RCW 26.09.430, ruled that "a person with whom the child resides a majority of the time" garners the presumption. *In re Marriage of Jackson & Clark*, 4 Wn. App. 2d 212, 217, 421 P.3d 477 (2018). RCW 26.09.430 declares:

> . . . [A] person with whom the child resides a majority of the time, or a person with substantially equal residential time, shall notify every other person entitled to residential time or visitation with the child under a court order if the person intends to relocate.

Richard Weaver asks this court to follow *Marriage of Jackson & Clark.* Consistent with Richard's request, we question whether a parent should receive the

presumption when the children have resided with the other parent for a majority of the

time for at least the last year. Nevertheless, we decline to resolve this issue and, like the

superior court, apply the relocation presumption.

On an objection to the relocation, the superior court must conduct a fact-finding

hearing. The court has discretion to grant or deny a relocation only after considering all

eleven relocation factors catalogued in RCW 26.09.520. *In re Marriage of Horner*, 151

Wn.2d 884, 894 (2004). RCW 26.09.520, the meat of the Washington child relocation

act, declares:

> The person proposing to relocate with the child shall provide his or
> her reasons for the intended relocation. There is a rebuttable presumption
> that the intended relocation of the child will be permitted. A person entitled
> to object to the intended relocation of the child may rebut the presumption
> by demonstrating that the detrimental effect of the relocation outweighs the
> benefit of the change to the child and the relocating person, based upon the
> following factors. The factors listed in this section are not weighted. No
> inference is to be drawn from the order in which the following factors are
> listed:
> (1) The relative strength, nature, quality, extent of involvement, and
> stability of the child's relationship with each parent, siblings, and other
> significant persons in the child's life;
> (2) Prior agreements of the parties;
> (3) Whether disrupting the contact between the child and the person
> seeking relocation would be more detrimental to the child than disrupting
> contact between the child and the person objecting to the relocation;
> (4) Whether either parent or a person entitled to residential time with
> the child is subject to limitations under RCW 26.09.191;
> (5) The reasons of each person for seeking or opposing the
> relocation and the good faith of each of the parties in requesting or
> opposing the relocation;
> (6) The age, developmental stage, and needs of the child, and the
> likely impact the relocation or its prevention will have on the child's

physical, educational, and emotional development, taking into consideration any special needs of the child;

(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;

(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;

(10) The financial impact and logistics of the relocation or its prevention; and

(11) For a temporary order, the amount of time before a final decision can be made at trial.

RCW 26.09.520 neither weighs nor lists the relocation factors in any particular order. *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 403 (2020). Presumably the superior court must grant the motion for relocation if all eleven factors favor a move in residence. Presumably the superior court must deny the motion if all eleven factors disfavor relocation. No case discusses how to count or weigh the various factors when some favor and others disfavor relocation. After the hearing, the court has authority "to allow or not allow a person to relocate the child" based on an overall consideration of the RCW 26.09.520 factors and the child's best interests. RCW 26.09.420; *In re Parentage of R.F.R.*, 122 Wn. App. 324, 329, 93 P.3d 951 (2004); *In re Marriage of Grigsby*, 112 Wn. App. 1, 7-8, 57 P.3d 1166 (2002).

This reviewing court reviews a trial court's decision on relocation for an abuse of discretion. *In re Marriage of Horner*, 151 Wn.2d 884, 893 (2004). An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable

grounds or untenable reasons. *In re the Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

This court reviews challenged findings of fact for substantial evidence. *In re Marriage of Fahey*, 164 Wn. App. 42, 55 (2011). Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *In re Marriage of Fahey*, 164 Wn. App. at 55. This court does not substitute its judgment for that of the trial court or reweigh the evidence or the credibility of the witnesses. *In re Marriage of Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).

A superior court must enter specific findings on each statutory factor. When it fails, the appellate court asks whether substantial evidence supports each factor and whether the superior court's findings or oral opinion reflect that it considered each factor. *In re Marriage of Horner*, 151 Wn.2d 884, 896 (2004).

Vanessa Weaver contends that the superior court only applied a "best interests of the children" standard and, therefore, focused only on maintaining the status quo. She argues that the emphasis should be on the requirement that the objecting parent show that relocation would be so detrimental as to outweigh the benefits to the children *and* the parent wishing to relocate. By disregarding the interests of the relocating parent, she argues that the superior court necessarily abused its discretion.

We conclude that the superior court considered each factor. The court's ruling does not demonstrate an improper shift of the burden of proof to Vanessa Weaver or a failure to apply the presumption in favor of relocation. The evidence supported the court's findings, and, after reviewing the eleven statutory factors, the evidence and findings support denial of Vanessa's application for relocation.

> *Factor 1: The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent*

Vanessa Weaver contends that the superior court failed to expressly state whether the first factor weighed in favor of relocation. Nevertheless, according to Vanessa, the court's findings and oral ruling demonstrate that the court concluded that Richard failed to overcome the presumption in favor of relocation. Vanessa emphasizes her role as primary caregiver for her children. She contends that she primarily assisted in their education.

Richard Weaver responds that the trial court weighed the factor in Richard's favor. He highlights that the trial court concluded that Jesse needed routine and stability, which only Richard offered. Richard further underscores that both boys lived with him for one year before trial. He attended to the sons' medical, social and emotional needs. The guardian ad litem testified that Richard appeared "very comfortable parenting these kids." David expressed a preference for living with his father.

As to the strength of the relationship between the children and the parents, the superior court weighed this as equal between the parents. Based on this finding, Vanessa Weaver contends that the factor favors her. In so arguing, she posits that her case echoes the decision in *Shrauner v. Olsen*, 16 Wn. App. 2d 384 (2020). In *Shrauner*, the superior court found that both parents had a strong relationship with their child, but concluded that the child's relationship with the mother, Shelby Shrauner, was less stable. The trial court added that Schauner's employment history, her lifestyle, the quantity of her romantic relationships, and her moving before the court approved relocation demonstrated her instability. On appeal, Shelby Shrauner argued that the superior court improperly focused on the stability of the parents in their personal lives rather than on her relationship with her son. This court agreed that no facts supported that Shrauner's employment, romantic attachments, or lifestyle had affected her relationship with her son, and, therefore, the superior court's findings lacked relevance.

We distinguish *Shrauner v. Olsen*. Unlike the superior court in *Shrauner*, the Weavers' trial court considered Richard's stability and Vanessa's instability, not in terms of lifestyle or romantic relationships, but in the context of their respective relationships with the boys and in the context of providing care for the children. The child of the former couple, in *Shrauner v. Olsen*, lacked any special needs. The Court of Appeals in *Shrauner* disliked the trial court's value judgments about Shrauner wishing to live an alternative lifestyle off the grid.

We disagree that the superior court determined factor (1) to favor Vanessa Weaver. Admittedly, the superior court compared as equal the respective strengths of Richard's and Vanessa's relationships with the two sons. Nevertheless, factor (1) lists other dynamics in the parent-child relationship for consideration. Those other components include the nature, quality, extent of involvement, and stability of the child's relationship to the parent. The "nature" of the relationship would encompass numerous qualities and elements.

In finding 5(a), the superior court wrote that the father presents more stability. In its oral ruling, the court relied heavily on the opinions of guardian ad litem Ruth Esparza, and the court began its ruling by highlighting testimony from Esparza.

Both David and Jesse possess special needs and demand stability and consistency. Although factor 1 only expressly mentions the stability of the child's relationship with the parent, the parent's contribution to the child's stability falls under the nature and quality of the parent-child relationship. Richard exceeds Vanessa in other parenting skills such as house maintenance. Although the superior court discounted the clutter and filth in Vanessa's home, this reviewing court can consider those underlying facts, along with the finding of stability, when affirming the superior court's conclusion that factor 1 supports denial of relocation.

*Factor 2: Prior agreements*

RCW 26.09.520(2) requires the superior court to consider any prior agreements between the parties. The superior court determined that no prior agreements existed between the parties. The court stated that "Factor 2 is not really a consideration for the Court." RP at 722.

Vanessa Weaver characterizes factor 2 as neutral and that any neutral factor operates in favor of relocation. Richard Weaver argues that factor number 2 does not apply and thus the factor neither supports nor undermines relocation.

Because the statute weighs in favor of relocation, a factor which does not operate to rebut the presumption generally favors relocation. *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 407 (2020). In *Shrauner v. Olsen*, the superior court considered the first factor under former RCW 26.09.520 (2000) and determined that both parents had a stable relationship with their child and, therefore, the factor was neutral. On appeal, this court stated that a neutral factor has the effect of favoring the presumption. Nevertheless, this court noted that factor 2, prior agreements, and factor 11, temporary orders, "do not apply and are not at issue in this case." *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 405 n.2 (2020). The court did not weigh either factor in favor of relocation.

An earlier agreement or temporary order bears relevance, if at all, to a motion to relocate because the court needs to decide whether to enforce the agreement and the impact on the proceeding of the earlier order. The two factors lack germaneness to the

31

best interests of the child and the child's relationships with the respective parents.

Therefore, we agree with Richard Weaver that the lack of a prior agreement, as an

inapplicable factor, does not support relocation.

> *Factor 3: Whether disrupting contact between the child and the*
> *person seeking relocation would be more detrimental to the child than*
> *disrupting contact between the child and the person objecting to the*
> *relocation*

Vanessa Weaver contends that the superior court improperly shifted the focus of

factor 3 from the detriment of disruption of contact between the boys and the respective

parents to that of harm resulting from the disruption of contact between the boys and the

city of Wenatchee. She contends that the superior court relied on circumstances that arise

any time a child moves such as the need to procure new health care providers. She

complains that the court also failed to consider her role as primary caregiver for the

children up to September 2019. Richard responds that the superior court considered the

disruption to the relationship of each parent and, in doing so, considered the fact that the

boys had spent the past year with Richard in Wenatchee and appeared to be doing well.

In both its oral ruling and finding of fact 5(c), the superior court expressed concern

about any relocation disrupting the children's connection to their school and health care

providers. The court added that the boys will suffer more by the disruption of their

contact with their father than their mother. Ample evidence supported the finding.

32

Therefore, we agree with the superior court that this important factor supports denial of relocation.

We might express concern about the superior court inverting the presumption in another case wherein the court emphasizes a child's tie to his present community. This appeal is not any case, however. Jesse's makeup lies within the autism spectrum. Autistic persons suffer from major changes and moves.

### *Factor 4: Limitations on the parties*

Vanessa Weaver contends that factor four is neutral as the superior court rejected her concerns regarding Richard's excessive alcohol consumption, and, therefore, the factor weighs in favor of relocation. Richard disputes the neutrality of the factor. He argues that the superior court's rejection of Vanessa's dishonorable accusations of alcohol abuse demonstrate that the factor should weigh against relocation.

RCW 26.09.520(4) asks the superior court to consider whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191. The latter statute limits a parent's residential time if the parent has been convicted of certain sexual crimes or has engaged in willful abandonment; physical, sexual, or a pattern of emotional abuse of a child; or a history of domestic violence.

Although we do not condone falsely accusing another of alcoholism, we agree with Vanessa Weaver. RCW 26.09.191 does not list fabricated accusations as a reason

for limiting a parent's time with a child. Neither party engaged in conduct that could impose limitations on visitation. The factor is neutral and thereby favors relocation.

> *Factor 5: Reasons for seeking or opposing relocation and good faith of each party*

The parties agree that factor 5 is neutral. This factor, therefore, weighs in favor of relocation.

> *Factor 6: The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child*

Vanessa Weaver argues that, with respect to factor 6, the superior court improperly shifted the burden of proof to her to convince the court that the children would obtain the same level of care in the Hoquiam area should they move. In turn, Vanessa further argues that Richard must prove that the children's needs would not be served in the Hoquiam area should they relocate. Finally, she contends that the superior court again relied on facts inherent in any relocation.

Richard Weaver responds that he bore the burden to provide some evidence on each factor and to show the superior court on a more likely than not basis that the factors disfavor relocation. He adds that he cannot be expected to definitively prove a negative, such as the Hoquiam area could not satisfy the boys' care. Richard argues that the burden of showing a negative shifted to Vanessa.

A burden of production and persuasion may shift depending on which party forwards the affirmative allegation or possesses peculiar means of knowledge. *Alaska Department of Environmental Conservation v. Environmental Protection Act.*, 540 U.S. 461, 494 n.17, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004); *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 494 (9th Cir. 2019). For this reason, when a party has ready access to evidence that the other party does not, the burden of establishing a negative will be shifted. *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d at 494. When the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. *United States v. Denver & Rio Grande R.R. Co.*, 191 U.S. 84, 92, 24 S. Ct. 33, 48 L. Ed. 106 (1903); *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d at 494.

The superior court entered finding of fact 5(g), which stated that relocation of the children would impact the children's physical, educational, and emotional development. Ample evidence confirms this finding.

David was ten years old and Jesse eight years old at the time of trial. Richard and Vanessa Weaver's superior court commented that David is a gifted student, whose educational needs are met in Wenatchee. Jesse, being autistic, needs emotional stability, routine, and structure. The superior court found that Vanessa could not at this time provide those needs for Jesse. Richard was fulfilling the needs. Jesse had visited many professionals in the Wenatchee area, who already knew of Jesse's needs. Jesse is

currently thriving, despite his disability. The superior court commented that Jesse would need to start over with other professionals if he relocated. Factor 6 supports denial of relocation.

> *Factor 7: The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic areas*

Vanessa Weaver argues that the superior court, once again, improperly shifted the burden to her to show the advantages to her and the children by moving. She argues that Richard presented no evidence that a lack of resources and opportunities existed in the Hoquiam area. Vanessa argues that the superior court's finding that "no advantage" existed as a result of relocation ignored the fact that she had childcare and school transportation available in Hoquiam, but not Wenatchee. The court need not have believed this testimony.

Vanessa Weaver argues that a court can conclude that, when a parent obtains better opportunities, the benefits extend to the child and their quality of life is likewise improved. She cites *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 412 (2020) for this proposition. We do not find such a proposition on any page within *Shrauner v. Olsen*. Nevertheless, we agree that in many circumstances the increase in opportunity for the parent will benefit the child. But benefit to the child will not always be true.

Factor 7 covers only the relocating parent's current and proposed circumstances, with no counterbalanced consideration of the other parent's circumstances. *Bergerson v.*

36

*Zurbano*, 6 Wn. App. 2d 912, 922, 432 P.3d 850 (2018). The superior court, during its

oral ruling, found that Vanessa Weaver's quality of life will increase by a move to

Hoquiam, but the quality of life for the boys will not improve. In so finding, the superior

court relied on factors previously discussed. The court confirmed the oral findings in

written finding of fact 5(h).

The superior court could have reasonably concluded, based on ample evidence,

that a move to Hoquiam would not improve the quality of life for David and Jesse and

would probably decrease their quality of life. Vanessa Weaver sat in the best position to

present evidence of opportunities for the boys in the Hoquiam area. As far as services for

Jesse, her testimony confirmed a lack of autism services for him in Hoquiam. The boys

already had a network of family and friends and established medical and educational

resources available in Wenatchee.

> *Factor 8: The availability of alternative arrangements to foster and*
> *continue the child's relationship with and access to the other parent*

Vanessa Weaver argues that the trial court erred in determining that no alternative

arrangements existed that would permit Richard to continue his relationship with the boys

should she and the boys relocate. Richard responds that, although alternative

arrangements would have permitted the continuation of *some* relationship, the trial court

did not err in ruling in his favor on factor 8 since any remote participation would have

been insufficient given the fact that Richard had primary custody of the boys at the time of trial.

The superior court must not interpret factor 8 as a requirement for the parties to maintain, in effect, the same residential schedule or quantity of residential time as under the prior arrangements. *Shrauner v. Olsen*, 16 Wn. App. 2d 384, 417 (2020). Still, factor 8 assumes some continuity in the relationship with both parents, despite the move.

The boys' relationship with their father, at the time of trial, entailed the father successfully fulfilling the role of primary care giver. If Vanessa Weaver continued to live in Wenatchee, both parents could have spent considerable time with both boys. Her move to Hoquiam with the two boys would end the current relationship with the father and significantly interfere in Richard's access to the sons. The distance between the two cities is 239 miles and, assuming light traffic, the trip takes more than four hours. A move by the boys with Vanessa would significantly change Richard's relationship with his boys. Ample evidence supported a finding that factor 8 disfavored relocation.

> *Factor 9: The alternatives to relocation and whether it is feasible and desirable for the other party to relocate*

In its oral ruling, the superior court observed Richard Weaver's operation of a business in Chelan for many years and thus the lack of desirability of his moving to Hoquiam. The court, in finding of fact 5(j), found a lack of alternatives to the planned

move and the impossibility of Richard moving from Wenatchee because of his self-employment.

Vanessa Weaver interprets the finding of a lack of alternatives to impliedly mean that she lacked any alternative but to move to Hoquiam. Nevertheless, Vanessa had already moved and presented no alternatives to the court. We hold that sufficient evidence supports finding of fact 5(j). This factors weighs against relocation.

> *Factor 10: The financial impact and logistics of the relocation or its prevention*

The parties agree that this factor weighed in favor of relocation and that sufficient evidence supported the trial court's finding of fact 5(k) that Vanessa "has obtained full time employment where she currently resides." CP at 125.

Factor 11 only concerns temporary orders.

> *Aggregation of Factors*

In sum, the superior court considered all eleven statutory factors. The superior court ruled against relocation after determining that Richard had rebutted the presumption favoring relocation because the detrimental effect to the move outweighs any benefit of relocation. Although the superior court stated in its oral ruling that denial of relocation would serve the best interests of the children, the court did not solely rest its decision on the children's interests. The court weighed all factors, including Vanessa Weaver's

interest in relocating with her boys. Most of the factors favored denying Vanessa's application for relocation.

## Attorney Fees

Both parties request attorney fees. Vanessa Weaver requests fees pursuant to RCW 26.09.140 and RAP 18.1(a). Richard requests fees under RCW 26.09.140 on the basis of alleged intransigence on the part of Vanessa. Richard also requests fees under RAP 18.9(a) for Vanessa's alleged filing of a meritless appeal.

RCW 26.09.140 permits this reviewing court to exercise its discretion and "order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." This court has stated that "[i]n exercising our discretion, we consider the issues' arguable merit on appeal and the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay." *In re Marriage of Kim*, 179 Wn. App. 232, 256 (2014).

RAP 18.9(a) provides:

> The appellate court on its own initiative or on motion of a party may order a party or counsel, or a court reporter or authorized transcriptionist preparing a verbatim report of proceedings, who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court.

An appeal is frivolous if the appellant presents no debatable issues and the appeal has no chance of success. *Kinney v. Cook*, 150 Wn. App. 187, 195, 208 P.3d 1 (2009).

We deny each party's request for fees. Neither party can afford to pay attorney fees, let alone the other party's fees. We do not deem Vanessa Weaver's appeal to be frivolous, nor do we conclude she engaged in intransigence. She forwarded many valid arguments, despite failing to convince us to reverse.

Both parties have filed motions and affidavits, with this court, in support of and in opposition to requests for reasonable attorney fees and costs. Because of our denial of both requests, we do not address the motions.

CONCLUSION

We affirm the trial court's ruling that denied Vanessa Weaver's motion for relocation with the two children. We deny each side an award of reasonable attorney fees and costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____     _____
Pennell, C.J.                        Staab, J.